## PEOPLE v WILSON

Docket No. 250804. Submitted January 11, 2005, at Detroit. Decided March 8, 2005, at 9:00 a.m. Leave to appeal sought.

Willie L. Wilson was convicted by a jury in the Oakland Circuit Court of assault with intent to commit great bodily harm less than murder, the victim being his wife. Rudy J. Nichols, J., received the verdict and presided over the sentencing as the assigned judge, but a visiting judge had presided over the trial. The defendant was sentenced as a fourth-offense habitual offender to ten to twenty years of imprisonment. The defendant appealed.

The Court of Appeals *held*:

1. The replacement of the judge before the end of trial caused no prejudice to the defendant. The replacement judge received the verdict, took the defendant's guilty plea on the habitual offender notice, revoked bond with the defendant's consent, and ordered DNA testing. None of these actions required any information presented during the trial.

2. A defendant has the right to be sentenced by the judge who presided over the trial. In this case, the judge who did the sentencing was not the judge who presided over the majority of the trial. However, because the defendant only claimed that he was disadvantaged, not that he was prejudiced by the error, no remedy is available to him.

3. It was not prosecutorial misconduct for the prosecutor to refer to the charged offenses as "domestic assault" or "domestic violence" even though the Legislature does not apply such labels to the offenses. Despite the dismissal of misdemeanor charges that are sometimes referred to as domestic assault or domestic violence, the facts described a domestic violence situation, so the descriptions were not improper.

4. Because the jury was given the option to convict on an intermediate lesser offense, felonious assault, and because that option was rejected by the jury, the defendant's claim that certain other instructions on lesser offenses should have been given is without merit. The jury rejected the intermediate offense, so the

defendant cannot establish a realistic probability that the jury would not also have rejected lesser misdemeanor offenses.

5. The trial court did not abuse its discretion in scoring offense variable (OV) 7, "aggravated physical·abuse," MCL 777.37, at fifty points. The score was supported by the record. The challenge to the scoring of OV 13, continuing pattern of criminal behavior, MCL 777.43, need not be considered because the sentence recommended by the guidelines would not change if OV 13 were scored at zero points.

6. As decided in *People v. Claypool*, 470 Mich 715, 730 n 14 (2004), and *People v Drohan*, 264 Mich App 77, 89 n 4 (2004), *Blakely v Washington*, 542 US ___; 124 S Ct 2531 (2004), does not apply to sentences under the Michigan sentencing guidelines system.

Affirmed.

O'CONNELL, J., concurring in part and dissenting in part, stated that he would vacate the sentence and remand for resentencing by the trial judge because a defendant has the right to be sentenced by the judge who presided over his trial. The transfer of the case after trial for the purpose of sentencing to a judge unfamiliar with the trial is a type of error that does not require proof of prejudice. The reasons supporting a resentencing are that it is counterintuitive to move for the removal of a judge about to sentence you and ask to be sentenced instead by the trial judge who convicted you, it is nearly impossible to demonstrate any actual prejudice, and the error affects the validity of the process more than it affects any one defendant. Judge O'CONNELL concurred with the rest of the majority opinion.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *David G. Gorcyca*, Prosecuting Attorney, *Joyce F. Todd*, Chief, Appellate Division, and *Thomas R. Grden*, Assistant Prosecuting Attorney, for the people.

*Enid Livingston* for the defendant.

Before: SCHUETTE, P.J., and SAWYER and O'CONNELL, JJ.

SAWYER, J. Defendant was convicted, following a jury trial, of assault with intent to commit great bodily harm

less than murder. MCL 750.84. He was sentenced as a
fourth-offense habitual offender to serve ten to thirty
years in prison, consecutively to the sentence for which
he was on parole at the time of the instant offense. He
appeals and we affirm.

Defendant's conviction arises out of an assault he
committed upon his wife, Lisa Wilson. The victim
described a brutal attack, involving punching, slapping,
choking, and threats with weapons on New Year's Day
in 2003. The victim received a laceration to her hand,
which required eight stitches, and she was confined to a
wheelchair and then to the use of a cane for several
weeks after the attack. The assault took place on and off
over a few hours. Defendant's theory was that he did
not assault the victim and, in any event, the injuries
were not as severe as suggested.

Defendant first argues that he was denied a fair trial
because of the replacement of the trial judge during
trial. We disagree. The assigned judge was unable to
preside over the trial, apparently because of medical
issues. Accordingly, a visiting judge presided over the
actual trial. When the jury was sent out to deliberate,
the visiting judge informed them that the assigned
judge would be back the next day to take their verdict
and that they would not see him again. In fact, the
assigned judge did take the verdict and also presided
over sentencing.

First, we note that defendant did not properly pre-
serve this issue for review. At no time during the trial
itself did defendant object to the replacement of the
visiting judge with the assigned judge. Furthermore,
despite defendant's representations to the contrary in
his brief on appeal, the issue was not, in fact, raised at
sentencing. In his brief, defendant cites an irrelevant
court rule, MCR 2.517(A)(7), which provides that an

exception need not be taken from a trial court's factual findings or decisions when sitting without a jury or with an advisory jury. Defendant then states that "counsel raised the issue on the record of the problem stemming from a sentencing judge who did not hear the evidence and accordingly was not in a position to accurately score the sentencing guidelines." This statement is true only in the most literal of terms. Defense counsel at sentencing, while challenging the scoring of offense variable 7 (OV 7), stated, "I'm the only one now that was [present] during the trial 'cause the judge is different, the prosecution is different, and I stand by the lack of—that there should be no scoring for OV 7, your Honor." This hardly constitutes an objection to the fact that the sentencing judge was not the judge who presided over the trial.

Accordingly, because the issue was not preserved with an objection, we review it for plain error under *People v Carines*, 460 Mich 750; 597 NW2d 130 (1999). In *Carines, supra* at 763, the Michigan Supreme Court, relying on the decision in *United States v Olano*, 507 US 725; 113 S Ct 1770; 123 L Ed 2d 508 (1993), described the plain error rule as follows:

> The *Olano* Court emphasized that a constitutional right may be forfeited by a party's failure to timely assert that right. *Id.*, p 731. To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. *Id.*, pp 731-734. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. *Id.*, p 734. "It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." *Id.* Finally, once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether forfeited error resulted in the conviction of an actually

innocent defendant or when an error " 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." *Id.*, pp 736-737.

*Carines, supra* at 774, applies this rule to both constitutional and nonconstitutional errors.

With respect to the assigned judge replacing the visiting judge at the end of the trial, defendant certainly cannot demonstrate prejudice. After the substitution, the assigned judge did four things: receive the verdict, take defendant's guilty plea on the habitual offender notice, revoke defendant's bond (with defendant's consent), and order DNA testing as required. In short, the judge did nothing that required his presence at the trial and did not make any decision that was dependent in any way on any information presented during the trial. The exact same actions would have been taken by the visiting judge had he remained through the end of the trial.

The only suggestion of prejudice at the trial stage advanced by defendant is the "subtle harm" caused by the visiting judge's departure, which may have caused the jury to regard the trial as "unimportant" because it was "not important enough" to cause the presiding judge to return to receive the verdict. Defendant concedes that the "ramifications of this dismissive treatment . . . cannot be measured," but asserts that "we can be sure that it had an impact." We are by no means so sure that it had any such effect. At the beginning of the trial, the visiting judge introduced himself to the jury panel as a retired judge from Ionia County who was filling in because the assigned judge was ill. Before releasing the jury for deliberations, the visiting judge informed the jury that the assigned judge was now able to come back on a limited basis and would be there the

next day. This hardly suggests that the visiting judge found the trial unimportant; rather, it suggests that the assigned judge was doing better and could resume his duties and the substitute judge was no longer necessary.

For these reasons, we conclude that defendant has not met his burden of establishing prejudice with respect to the assigned judge returning to receive the verdict. Accordingly, review of this issue has been forfeited under *Carines, supra* at 763.

But the issue of sentence being imposed by the assigned judge rather than the visiting judge who presided over the trial is not so easily resolved. First, a plain error did occur as a defendant has the right to be sentenced by the judge who presided over the trial. *People v Bart (On Remand)*, 220 Mich App 1, 8; 558 NW2d 449 (1996). But we are not persuaded that defendant has met his burden of establishing prejudice. Defendant's only argument in this respect is that he was "disadvantaged" in having the assigned judge handle the sentencing in responding to defendant's challenge to the scoring of OV 7, MCL 777.37, without the judge having heard the evidence at trial. We disagree.

First, defendant mischaracterizes the sentencing judge's actions as raising the score of OV 7 from zero to fifty points. The judge did no such thing. The presentence report had scored OV 7 at fifty points. At sentencing, defendant objected to that scoring. The only basis offered at sentencing for the objection, however, is that in the trial prosecutor's sentencing memorandum at "no time does she request or does she stand by and request 50 points as scored by Probation which obviously did not sit through the trial, your Honor. I'd ask that that be scored zero." Thus, the sentencing judge did not raise the scoring from that recommended by the

presentence report; he merely affirmed that score despite the fact that the trial prosecutor had not suggested that any points be scored for OV 7 in her sentencing memorandum.

Second, the trial court stated the reasons for rejecting defendant's objections to the scoring as the reasons stated by the assistant prosecutor present at sentencing, as well as facts given in the presentence report. Further, the trial court indicated that the sole reason given by defendant, the fact that the trial prosecutor's sentencing memorandum failed to discuss OV 7, was an inadequate reason to challenge the scoring.

Third, defendant can, and in fact does, challenge the scoring to OV 7 on appeal. Thus, if the trial court's lessened familiarity with the case caused it to make an erroneous ruling on defendant's challenge to the scoring, that error can be corrected on appellate review.

For these reasons, we are not persuaded that defendant has met his burden of establishing prejudice by the error. Accordingly, defendant has also forfeited this issue. *Carines, supra.*

Next, defendant raises three arguments arising out of the pretrial dismissal of the misdemeanor charges included in the information. In addition to the charge upon which defendant was convicted, assault with intent to do great bodily harm, the information also charged defendant with felonious assault, MCL 750.82; aggravated assault (domestic), MCL 750.81a(2); and simple assault (domestic), MCL 750.81(2). Before trial, the aggravated assault and simple assault charges were dismissed on the prosecutor's motion (over defendant's objection). Further, although it does not appear from either the complaint or the information that defendant was being charged in the alternative, the jury instructions presented the felonious assault charge as a lesser

included offense to the charge of assault with intent to do great bodily harm. Thus, the jury returned only one verdict, convicting defendant of the greater offense of assault with intent to do great bodily harm.

Defendant first argues that the prosecutor engaged in misconduct by characterizing this case as a domestic violence case after the misdemeanor domestic assault charges were dismissed. We review de novo unpreserved claims of prosecutorial misconduct to determine whether defendant was denied a fair trial. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001). Defendant's argument is frivolous, being based on the inaccurate assumption that domestic violence is limited to misdemeanor assaults. Domestic violence includes any of the assaults. Indeed, even murder may be characterized as domestic violence. Domestic violence is not a specific crime, but a description of circumstances surrounding a violent crime in which the perpetrator and the victim have a preexisting relationship that may be categorized as a "domestic" relationship.

In fact, while the misdemeanor charges that were dismissed may sometimes be labeled "domestic assault," see, e.g., CJI2d 17.2a, or, as the prosecutor did in the information in this case, "domestic violence," the Legislature applies no such label. Nor does the Legislature define the misdemeanor domestic assaults as separate crimes. Rather, within the provisions of the existing misdemeanor assaults (assault, assault and battery, and aggravated assault), the Legislature has provided for sentence enhancements for persons convicted of those assaults if committed in a domestic context and if the defendant has a prior conviction for any of a variety of assaults committed in a domestic context.

Moreover, in establishing those enhancements, the Legislature defines an assault as being a domestic

assault if the defendant and the victim have ever been married to each other, have ever resided together, had a child in common, or have ever had a dating relationship. See MCL 750.81(2), (3), and (4), and MCL 750.81a(2) and (3). Moreover, the prior convictions that can be considered, if committed in a domestic context, can include certain felony assaults—felonious assault, assault with intent to commit murder, assault with intent to do great bodily harm, and assault with intent to maim. Therefore, the Legislature clearly includes these felony assaults, including the offenses with which defendant was charged in this case, as being "domestic assaults." Indeed, because defendant was convicted of one of the crimes listed in the statute and the victim was his wife, defendant's current conviction may properly be used as a predicate conviction for any future enhancement of a misdemeanor domestic assault conviction. Thus, while the Legislature has not chosen to enhance the penalties for felony assaults that occur in the domestic context, clearly the Legislature regards those assaults as constituting domestic violence.

In sum, despite the dismissal of the misdemeanor charges in this case, it is proper to refer to this case as one involving domestic violence. Therefore, such a description by the prosecutor during trial was not improper.

Defendant also argues that evidence of the relationship between defendant and the victim was irrelevant under MRE 402 because the misdemeanor charges had been dismissed and it was not necessary to establish a relationship to prove the elements of the remaining felony charges. While it is true that the existence of a relationship was not an element that had to be proved to establish defendant's guilt, it is certainly a relevant factor to explain the events that occurred.

Defendant's final argument under this issue is that the jury should have been instructed on the misdemeanor assault charges. He does so not directly on the basis that the trial court erred by granting the motion to dismiss the misdemeanor charges, but as a direct argument that he was entitled to have the jury instructed on the misdemeanor offenses. Defendant is not entitled to relief on this issue.

First, it does not appear from the record that defendant has preserved this issue for review by requesting that the instructions be given. Accordingly, our review is limited by the plain error rule under *Carines*.

Second, even if we treat defendant's pretrial objection to the dismissal of the misdemeanor charges as a request for those instructions, thus preserving the issue, defendant's entitlement to the instructions would be subject to the restrictions on instructions on lesser included offenses set forth in *People v Cornell*, 466 Mich 335; 646 NW2d 127 (2002), and its progeny. Specifically, defendant would be entitled to the instructions only if the misdemeanors would be considered necessarily included lesser offenses and then only if a rational view of the evidence would support giving the instruction. *Id.* at 357. Defendant seems to have conceded during the pretrial motion, and perhaps on appeal as well, that the misdemeanor charges are cognate offenses. Thus, defendant may be regarded as having conceded that he was not entitled to have those instructions given as an instruction on a necessarily included lesser offense.

We do note, however, that we are not convinced that the misdemeanor charges are, in fact, cognate offenses. But we need not resolve that issue and we leave it for another case to make that determination. Rather, even assuming that the misdemeanor charges are necessarily included lesser offenses and defendant was entitled to

have the instructions given, the trial court's failure to give them was harmless. The jury was given the option of an intermediate lesser offense—felonious assault—and rejected it in favor of the greater offense. Therefore, any failure to give instructions on lesser offenses was harmless. See *Cornell, supra* at 365 n 19.

Similarly, if we do not treat this issue as having been preserved for review, defendant is unable to demonstrate prejudice from the failure to give the instructions. Because the jury rejected the intermediate offense, defendant cannot establish a realistic probability that the jury would not also have rejected the misdemeanor offenses. Therefore, defendant does not meet his burden of establishing prejudice from instructional error.

Defendant's final argument is that the sentencing judge erred in the scoring of OV 7 and OV 13. First, defendant argues that the sentencing judge erred in scoring OV 7 at fifty points. We disagree. OV 7 covers aggravated physical abuse, and fifty points is appropriate if the "victim was treated with terrorism, sadism, torture, or excessive brutality." MCL 777.37. The prosecutor at sentencing argued that fifty points was appropriate:

> [T]he amount of brutality involved in here not only did he come after her with several weapons, but he choked her until she lost consciousness. He dragged her around. He beat her. He kicked her in the head, back, face. That's excessive. The choking her would have been sufficient for the GBH. He took it far beyond what was necessary to commit this offense.
>
> \* \* \*
>
> He—and he cut her with the knife also.

In affirming the scoring of OV 7, the sentencing judge cited the reasons given above by the prosecutor and the

following statement from the presentence investigation report:

> The instant offense involves the defendant physically assaulting his wife, the victim, Lisa Wilson by hitting, punching, kicking and choking in addition to attacking her with a broken glass candle holder and a knife, for which she incurred a 4-inch laceration on her right hand in an attempt to stop the knife attack. The victim also suffered several hematomas covering her face and body, and treated at the North Oakland Medical Center in Waterford, MI. The defendant denied the extent of the attack and minimized the brutality of the assault. He blamed the victim, stating she "over-reacted" and "started "hitting me, I pushed her down to stop her."

The standard of review for challenges to guidelines scoring was discussed in *People v McLaughlin*, 258 Mich App 635, 671; 672 NW2d 860 (2003):

> This Court reviews a sentencing court's scoring decision to determine whether the trial court properly exercised its discretion and whether the record evidence adequately supports a particular score. See *People v Hornsby*, 251 Mich App 462, 468; 650 NW2d 700 (2002). However, this issue also entails a question of statutory interpretation, which is reviewed de novo. *People v Schaub*, 254 Mich App 110, 114-115; 656 NW2d 824 (2002).

Defendant argues that the sentencing judge relied on two inaccurate statements of fact by the prosecutor at sentencing and that, in general terms, the attack on the victim was not excessively brutal for a crime involving assault with intent to commit great bodily harm. With respect to inaccurate statements of fact by the prosecutor at sentencing, they were, at most, minor. The prosecutor stated that defendant choked the victim "until she lost consciousness." In fact, the victim testified that she "felt like I was going to black out. I saw little flashes and stuff, it scared me." The distinction is

minimal. The second "inaccuracy" was the statement
that defendant cut the victim with the knife. Defendant
points out that the victim was cut when she grabbed the
knife. This is true, but out of context. The victim
testified that defendant came at her with a broken glass
candleholder in one hand and a butcher knife in the
other. When the knife was four inches from her midsec-
tion, she grabbed the knife, resulting in a laceration to
her hand that required eight stitches. We see no benefit
to defendant's position that the wound was inflicted
when the victim grabbed the knife trying to avoid being
stabbed rather than as the result of defendant slashing
her with the knife.

In sum, the factual review of the crime by the
prosecutor at sentencing and in the presentence report
relied on by the sentencing judge are consistent with
the victim's testimony in all important respects. The
victim's testimony detailed a brutal attack, which took
place over several hours, involving being attacked by
weapons and being kicked, punched, slapped, and
choked numerous times, ending in injuries requiring
treatment in a hospital. After the victim left the hospi-
tal, she was confined to a wheelchair for almost three
weeks and then walked with the assistance of a cane for
nearly three more weeks. She reported being in pain for
about two months after the attack and even occasional
pain thereafter. She had additional trips to her doctor
and the hospital afterward. We are satisfied that the
trial court properly exercised its discretion in scoring
OV 7 and that its scoring is adequately supported by the
record.

Because of our resolution of the scoring of OV 7, we
need not consider defendant's challenge to the scoring
of OV 13, continuing pattern of criminal behavior, MCL
777.43, because, even if we were to accept defendant's

position and score that offense variable at zero, it would not change the recommendation of the sentencing guidelines.

Finally, defendant has filed a supplemental brief in which he challenges his sentences on the basis of the United States Supreme Court's decision in *Blakely v Washington*, 542 US 296; 124 S Ct 2531; 159 L Ed 2d 403 (2004). The Michigan Supreme Court and this Court, however, have concluded that *Blakely* does not apply to sentences imposed in Michigan. *People v Claypool*, 470 Mich 715, 730 n 14; 684 NW2d 278 (2004); *People v Drohan*, 264 Mich App 77, 89 n 4; 689 NW2d 750 (2004).

Affirmed.

SCHUETTE, P.J., concurred.

O'CONNELL, J. (*concurring in part and dissenting in part*). While I agree that transferring the case after trial for sentencing by a judge unfamiliar with the trial was plain error, I would hold that this type of error does not require proof of prejudice. I would vacate defendant's sentence and remand to the trial judge for resentencing. In my opinion, if at all possible, a defendant has the right to be sentenced by the judge who presided over his trial.

At issue is the right to be sentenced, whenever possible, by the trial judge, the judge who is most familiar with the evidence. *People v Bart (On Remand)*, 220 Mich App 1, 8; 558 NW2d 449 (1996). Trial judges personally observe each witness's demeanor, so they sit in the best position to judge a witness's credibility. *Id*. Therefore, the right adds an extra measure of integrity, fairness, and justice to the process. It is a tenet of our judicial system based on the soundest of principles, and

we should not discard it for the sake of administrative efficiency. Nor should we rationalize this error on the basis that sentencing itself is now a product of the cold calculation of points assigned to jargonistic acronyms.[1] It is in this modern climate that the majority requires defendant to prove actual prejudice and then proceeds to demonstrate that any reasonable offer of proof is easily reduced to speculation. For example, it is not enough that the sentencing judge rejected the lighter sentence recommended by the probation officer and the original prosecutor, because the trial judge also might have rejected it, if given the chance.

I would hold that the error fits within that small class of errors that do not require a particularized showing of prejudice to receive a remedy. *People v Carines*, 460 Mich 750, 763 n 8; 597 NW2d 130 (1999); *United States v Olano*, 507 US 725, 735; 113 S Ct 1770; 123 L Ed 2d 508 (1993). I would take this approach for three reasons. First, it is counterintuitive to move for the removal of a judge about to sentence you and ask to be sentenced instead by the trial judge who convicted you. Second, as explained, it is nearly impossible to demon-

---

[1] While I admit that guidelines serve a legitimate purpose, the thought of removing all trace of humanity from the sentencing process deeply disturbs me. The sentencing function should not operate like a spreadsheet program that instructs judges to punch in OVs (offense variables), PRVs (prior record variables), and grid factors and then spits out the computer-generated sentence. Nor should sentences become abstract scores calculated by shifting OV and PRV beads on a designated grid's abacus. Sentencing is an integral and critical part of a judge's role in our society. It is best left, if at all possible, to the individual judge who is most familiar with the facts of each case. It is not simply a "mechanical function" requiring a working knowledge of the infamous legislative sentencing guidelines. The legislative guidelines have, to a degree, computerized the sentencing function. I hope that the guidelines have not so systemized sentencing that fastidious categorization and math skills are now adequate substitutes for the knowledge and experience a trial court acquires during the course of trial.

strate any actual prejudice, no matter how severe it may be. Therefore, under these circumstances, the prejudice requirement fails to serve any legitimate purpose. Third, the error adversely affects the validity of the process more than it affects any one defendant. The lack of a thoroughly informed judge at sentencing increases the risk of injustice, regardless of whether the outcome is more or less favorable to the particular defendant. These factors work in tandem to erode the very purpose of the process: to tailor a punishment as closely as possible to the criminal and the crime. Because the error seriously affects the integrity of the sentencing process, the correct remedy is to vacate defendant's sentence and remand for resentencing by the trial judge.[2] *Carines, supra* at 763.

I concur in the balance of the majority opinion.

---

[2] Of course, it is entirely possible that the trial judge is no longer available to resentence defendant. Under these circumstances, I would concede that the obligation to resentence defendant would fall to the judge who originally sentenced him, because the sentencing judge in this case had some initial exposure to the case. Therefore, if the trial judge were to be unavailable, the sentencing judge could simply reinstate the original judgment of sentence without the need for a new hearing. While the error would remain serious, it would simply lack any realistic remedy.