PEOPLE v HUSTON

Docket No. 288843. Submitted April 13, 2010, at Grand Rapids. Decided
    May 13, 2010, at 9:00 a.m.

Cecil D. Huston pleaded guilty in the Berrien Circuit Court of armed
    robbery and was sentenced by the trial court, Dennis M. Wiley, J.,
    to 180 to 600 months in prison. The Court of Appeals denied
    defendant's delayed application for leave to appeal and motion for
    reconsideration in unpublished orders, entered December 9, 2008,
    and January 28, 2009, respectively (Docket No. 288843). The
    Supreme Court, in lieu of granting leave to appeal, remanded the
    case to the Court of Appeals for consideration as on leave granted,
    limited to defendant's challenge to the scoring of offense variable
    (OV) 10, MCL 777.40, exploitation of a vulnerable victim, in light
    of *People v Cannon*, 481 Mich 152 (2008). 485 Mich 885 (2009).

    The Court of Appeals *held*:

    1. To score OV 10, there had to be evidence of exploitive
    conduct directed at a vulnerable victim. The factors to be consid-
    ered in deciding whether a victim was vulnerable, i.e., was suscep-
    tible to injury, physical restraint, persuasion, or temptation, in-
    clude (a) the victim's physical disability, (b) the victim's mental
    disability, (c) the victim's youth or agedness, (d) the existence of a
    domestic relationship, (e) whether the offender abused his or her
    authority status, (f) whether the offender exploited the victim by his
    or her difference in size or strength or both, (g) whether the victim
    was intoxicated or under the influence of drugs, or (h) whether the
    victim was asleep or unconscious. The factors focus on the personal
    susceptibility of the victim, not the victim's circumstances. The mere
    existence of any one of the factors does not automatically render the
    victim vulnerable, and the absence of a factor does not preclude a
    finding of victim vulnerability. Rather, the evidence must show
    merely that it was readily apparent that the victim was susceptible to
    injury, physical restraint, persuasion, or temptation. Subsections
    (1)(b) and (c) of MCL 777.40 require the sentencing judge to deter-
    mine if the offender exploited a victim. Subsection (1)(a) of MCL
    777.40 does not explicitly require the judge to determine if the
    offender exploited a victim, but does require the judge to determine if
    there was preoffense conduct directed at a victim for the primary

purpose of victimization. Because preoffense conduct directed at a victim for the primary purpose of victimization inherently involves some level of exploitation, points may be assessed under OV 10 for exploitation of a vulnerable victim when the offender has engaged in conduct that is considered predatory under the statute.

2. Predatory conduct, for purposes of OV 10, is behavior that precedes the offense and is directed at a person for the primary purpose of causing that person to suffer from an injurious action or to be deceived.

3. In determining whether 15 points may be assessed under MCL 777.40(1)(a) for predatory conduct, a court must consider whether the offender engaged in conduct before the commission of the offense, whether this conduct was directed at one or more specific victims who suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation, and whether victimization was the offender's primary purpose for engaging in the preoffense conduct.

4. The purpose of defendant's preoffense conduct of lying in wait was to rob someone. Defendant then chose a specific victim perceived to be weak. However, there was no evidence to indicate that the victim was inherently personally vulnerable. Therefore, OV 10 was improperly scored at 15 points and should have been scored at zero points. The judgment of sentence must be reversed and the case must be remanded for resentencing.

Judgment of sentence reversed; case remanded for resentencing.

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, *Arthur J. Cotter*, Prosecuting Attorney, and *Aaron J. Mead*, Assistant Prosecuting Attorney, for the people.

*Ronald D. Ambrose* for defendant.

Before: SERVITTO, P.J., and FITZGERALD and BECKERING, JJ.

PER CURIAM. Defendant appeals the sentence imposed upon him after his plea-based conviction of armed robbery, MCL 750.529. This Court originally denied plaintiff's delayed application for leave to appeal in an unpublished order, entered December 9, 2008 (Docket

No. 288843), but our Supreme Court, in lieu of granting leave to appeal, remanded the case to this Court for consideration as on leave granted, *People v Huston*, 485 Mich 885 (2009), limited to "the challenge to the scoring of offense variable 10, MCL 777.40, in light of *People v Cannon*, 481 Mich 152 [749 NW2d 257] (2008)." Because offense variable 10 was misscored, we reverse the judgment of sentence and remand for resentencing.

A trial court's findings of fact at sentencing are reviewed for clear error. *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008). This Court reviews a trial court's scoring decision under the sentencing guidelines " 'to determine whether the trial court properly exercised its discretion and whether the record evidence adequately supports a particular score.' " *People v Wilson*, 265 Mich App 386, 397; 695 NW2d 351 (2005), quoting *People v McLaughlin*, 258 Mich App 635, 671; 672 NW2d 860 (2003). A trial court's scoring decision for which there is any evidence in support will be upheld. *People v Endres*, 269 Mich App 414, 417; 711 NW2d 398 (2006). This Court reviews the interpretation of the statutory sentencing guidelines de novo. *People v Steele*, 283 Mich App 472, 490; 769 NW2d 256 (2009).

In February 2005, defendant and another individual approached a woman who had just pulled her vehicle into a parking spot at a shopping mall and robbed her. Defendant and the other individual were armed with BB guns and pointed them at the woman, demanding her purse and other items. They pushed the woman to the ground, cut her purse from her shoulder, and stole her vehicle, leaving the woman in the dark parking lot.

In August 2005, defendant entered a plea of guilty to a charge of armed robbery, MCL 750.529. Defendant's

sentence was thereafter calculated under the Michigan sentencing guidelines, with a score of 15 points being assigned to offense variable (OV) 10. At sentencing, defense counsel challenged the scoring of OV 10 at 15 points, arguing, "This was a random robbery. They drove out there, the first person they found they robbed. I don't know what was predatory about it." The trial court determined that the OV 10 was properly scored, opining: "I think predatory conduct can also constitute lying-in-wait in the parking lot, or wherever it is, which would also constitute predatory conduct, as opposed to disparity in size or victim's vulnerability based upon age and those other factors."

On February 8, 2006, the trial court sentenced defendant to a term of 180 to 600 months in prison. Defendant filed an application for leave to appeal, which this Court denied on December 9, 2008, and a motion for reconsideration, which this Court also denied in an unpublished order, entered January 28, 2009 (Docket No. 288843). As previously indicated, the Supreme Court remanded the case to this Court for our consideration of his challenge to the scoring of OV 10.

On appeal, defendant asserts that OV 10 was scored improperly and that the improper scoring affected the statutory sentencing guidelines range. Defendant thus claims entitlement to resentencing. We agree.

Defendant was assessed 15 points for OV 10. This offense variable, found at MCL 777.40, provides, in pertinent part:

(1) Offense variable 10 is *exploitation of a vulnerable victim*. Score offense variable 10 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

(a) *Predatory conduct* was involved .................... 15 points

(b) The offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status ......................................................................... 10 points

(c) The offender exploited a victim by his or her difference in size or strength, or both, or exploited a victim who was intoxicated, under the influence of drugs, asleep, or unconscious ............................................................ 5 points

\* \* \*

(3) As used in this section:

(a) *"Predatory conduct" means preoffense conduct directed at a victim for the primary purpose of victimization.*

(b) "Exploit" means to manipulate a victim for selfish or unethical purposes.

(c) *"Vulnerability" means the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation.* [Emphasis added.]

In *Cannon*, 481 Mich at 157-158, our Supreme Court held that to score OV 10 there had to be exploitive conduct directed at a vulnerable victim. Regarding vulnerability, the *Cannon* Court stated, in part:

> Thus, we conclude that points should be assessed under OV 10 only when it is readily apparent that a victim was "vulnerable," i.e., was susceptible to injury, physical restraint, persuasion, or temptation. Factors to be considered[11] in deciding whether a victim was vulnerable include (1) the victim's physical disability, (2) the victim's mental disability, (3) the victim's youth or agedness, (4) the existence of a domestic relationship, (5) whether the offender abused his or her authority status, (6) whether the offender exploited a victim by his or her difference in size or strength or both, (7) whether the victim was intoxicated or under the influence of drugs, or (8) whether the victim was

asleep or unconscious. The mere existence of one of these factors does not automatically render the victim vulnerable.

---

[11] The absence of one of these factors does not preclude a finding of victim vulnerability when determining whether it is appropriate to assess 15 points for predatory conduct. Rather, the evidence must show merely that it was readily apparent that the victim was susceptible to injury, physical restraint, persuasion, or temptation. MCL 777.40(3)(c).

---

[*Id.* at 158-159 (citations omitted).]

Regarding exploitation, the *Cannon* Court stated:

> The subsections of the statute directing the assessment of 5 and 10 points explicitly require the sentencing judge to determine if the offender "exploited a victim." The subsection directing the assessment of points for "predatory conduct," however, does not explicitly require the sentencing judge to determine if the offender exploited a victim. Rather, the sentencing judge must determine if there was "preoffense conduct directed at a victim for the primary purpose of victimization." Nonetheless, preoffense conduct directed at a victim for the primary purpose of victimization inherently involves some level of exploitation. Thus, we conclude that points may be assessed under OV 10 for exploitation of a vulnerable victim when the defendant has engaged in conduct that is considered predatory under the statute. [*Id.* at 159 (citations omitted).]

The *Cannon* Court defined "predatory conduct" as "behavior that precedes the offense, [and is] directed at a person for the primary purpose of causing that person to suffer from an injurious action or to be deceived." *Id.* at 161. The *Cannon* Court further provided the following guidance:

> To aid lower courts in determining whether 15 points are properly assessed under OV 10 [for predatory conduct], we set forth the following analytical questions:

> (1) Did the offender engage in conduct before the commission of the offense?
>
> (2) Was this conduct directed at one or more specific victims who suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation?
>
> (3) Was victimization the offender's primary purpose for engaging in the preoffense conduct?
>
> If the court can answer all these questions affirmatively, then it may properly assess 15 points for OV 10 because the offender engaged in predatory conduct under MCL 777.40. [*Id.* at 161-162].

Here, the trial court found that defendant was lying in wait. Such an inference could be fairly drawn from the evidence. Specifically, it is known that defendant was hiding, that the female victim was alone, and that no one was in the parking lot when the incident occurred. Defendant could have robbed anyone in the parking lot during the course of the evening, but apparently hid until a choice victim appeared. One could infer that he was waiting for such an isolated victim. Accordingly, the trial court's finding that defendant was lying in wait was not clearly erroneous.

Defendant's lying in wait was preoffense conduct. It follows that the purpose of lying in wait was to rob someone. The question therefore becomes whether defendant's lying in wait was sufficiently focused on the victim, Ms. Flanagan, to be deemed directed at a "specific" victim and whether the victim "suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation."

If the trial court made a determination as to whether Ms. Flanagan was a "specific" victim, it is not clear from the record. However, when discussion about the proper scoring of OV 10 was taking place, the prosecutor indicated that "although it may be the first person they

picked at a random pick, still they had a purpose to victimize one particular individual, whether it was Jane Doe or, in this particular case, Miss Flanagan." Defense counsel, disagreed, asserting, "[i]t's stalking, in essence. It's—It is particularly picking out a very particular victim." The trial court responded that stalking was not required. If the trial court was concluding that focus on a "specific" victim was not necessary, then, this conclusion was erroneous. Pursuant to *Cannon*, focus on a specific victim is required. Our Supreme Court stated:

> [T]he conduct must have been "directed at a victim" before the offense was committed. A lion that waits near a watering hole hoping that a herd of antelope will come to drink is not engaging in conduct directed at a victim. However, a lion that sees antelope, determines which is the weakest, and stalks it until the opportunity arises to attack it engages in conduct directed at a victim. Contrast that with an individual who intends to shoplift and watches and waits for the opportunity to commit the act when no one is looking. The individual has not directed any action at a victim. [*Cannon*, 481 Mich at 160.]

Nonetheless, in the instant matter, defendant did choose a "specific" victim. As defendant argued, he was initially looking for any victim fitting his criteria who might have appeared in the parking lot on the night in question. Choosing a lone and isolated victim was akin to focusing on the weakest antelope in the herd. Defendant waited for such a circumstance before he seized the opportunity to attack. In other words, this was not a random attack on just anyone in the parking lot but a planned attack on an individual perceived to be weak.

The remaining question, as set forth in *Cannon*, is whether Flanagan "suffered from a readily apparent susceptibility to injury, physical restraint, persuasion,

or temptation." As previously noted, factors to be considered in deciding the vulnerability of the victim include

> (1) the victim's physical disability, (2) the victim's mental disability, (3) the victim's youth or agedness, (4) the existence of a domestic relationship, (5) whether the offender abused his or her authority status, (6) whether the offender exploited a victim by his or her difference in size or strength or both, (7) whether the victim was intoxicated or under the influence of drugs, or (8) whether the victim was asleep or unconscious. [*Id.* at 158-159.]

While these factors are not exhaustive, the enumerated factors focus on the *victim*, and the statute suggests that susceptibility has to relate to the *victim*, not the victim's particular circumstances.

Here, there is nothing in the record to indicate that Ms. Flanagan was inherently vulnerable. While the prosecution contends that the timing (at night) and location (an isolated parking lot, outside the victim's locked vehicle) essentially rendered Ms. Flanagan vulnerable, these are not inherent characteristics of Ms. Flanagan, as contemplated by the statute and *Cannon*. Once again, from the record before this Court, it appears Ms. Flanagan was vulnerable only in the sense that she was in a location under circumstances that put her at higher risk,[1] and circumstances such as timing and location are part of a determination of preoffense conduct directed at a specific victim. The cases decided since *Cannon* underscore that these circumstances are more properly aimed at a determination of preoffense conduct and emphasize that the focus on whether a

---

[1] There is nothing in the record concerning whether defendant and his accomplice were greater in size and strength than Ms. Flanagan. In this regard, defendant was only 15 years old at the time of this offense; such a difference therefore cannot be presumed.

victim "suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation" involves the *personal* vulnerability of the victim.

For example, in *People v Miller*, unpublished opinion per curiam of the Court of Appeals, issued February 16, 2010 (Docket No. 287859), p 7, this Court noted that

> the timing and location of the sexual assault are evidence of predatory conduct. . . . [T]he victim went with defendant upon his request, defendant supplied intoxicants to her, and defendant then took her to a separate and isolated location to commit the sexual assault. However, predatory conduct alone is not sufficient to score this offense variable; rather, there must also be evidence that the victim was vulnerable.

The *Miller* Court then went on to conclude that the victim was susceptible to injury or physical restraint because of the age difference between the defendant and the victim (44 and 19 years old, respectively) and the fact that the defendant provided the victim with, and she consumed, two 40-ounce beers before she was sexually assaulted.

Likewise, in *People v Comtois*, unpublished opinion per curiam of the Court of Appeals, issued December 29, 2009 (Docket No. 286965), this Court concluded that a 17-year-old victim met the definition of a readily apparent vulnerable victim where she had suffered a mental impairment to the degree that she functioned as a 12 year old, and further had a speech impediment that made her mental impairment readily apparent. This Court further held that the record substantiated "the trial court's finding that defendant engaged in 'predatory conduct' by luring the obviously vulnerable victim into the woods before the assault." *Id.* at 4. See, also, *People v Murphy*, unpublished opinion per curiam of the Court of Appeals, decided December 22,

2009 (Docket No. 286016), p 4 ("The record supports that [the victim] was vulnerable given his age and feeble state.").[2] While these cases are unpublished and therefore not binding, we find their analyses sound and consistent with *Cannon*.

Notably, MCL 777.40(1)(d) provides that zero points are to be assessed where "[t]he offender did not exploit a victim's vulnerability." Here, defendant did take advantage of the fact that it was dark and no one else was in the parking lot. The darkness and the isolation may have made the robbery easier because the victim was less likely to resist physical restraint and there was no one to come to the victim's aid. However, as stated earlier, the isolation and timing of the offense supported the trial court's finding of preoffense conduct. These factors do not lead to a conclusion that Flanagan had a readily apparent susceptibility to physical restraint, and nothing else in the record suggests that Flanagan was personally vulnerable. It appears, rather, that she responded to the gun at the back of her head rather than any physical restraint. On the basis of the characteristics of vulnerability listed in *Cannon*, the focus being on characteristics of the victim, rather than the victim's circumstances, and on the basis of the record before this Court, we conclude that OV 10 was improperly scored at 15 points. It should have been scored at zero points.

If OV 10 is assigned zero points instead of 15 points, defendant's offense variable score would be reduced to 51. This would change his offense variable level from IV to III, resulting in a recommended minimum sentence

---

[2] While plaintiff cites *People v Kimble*, 252 Mich App 269, 274-275; 651 NW2d 798 (2002), and *People v Witherspoon*, 257 Mich App 329; 670 NW2d 434 (2003), as comparable to the instant case, those cases predate *Cannon*.

range of 108 to 180 months, instead of 126 to 210 months. See MCL 777.62. Defendant's minimum sentence was at the maximum end of the new range. Because there is a different recommended range, and the trial court has not clearly indicated that it would have imposed the same sentence regardless of the scoring error, resentencing is required. See *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006). Furthermore, our determination does not preclude the trial court from evaluating the evidence and making findings at resentencing regarding characteristics particular to the victim, consistent with *Cannon*.

Judgment of sentence reversed and case remanded for resentencing consistent with this opinion. We do not retain jurisdiction.