# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

LEANDRE LAMAR CHILDS,

Defendant-Appellant.

UNPUBLISHED
July 7, 2016

No. 326054
Wayne Circuit Court
LC No. 14-008407-01-FC

Before: METER, P.J., and SHAPIRO and O'BRIEN, JJ.

PER CURIAM.

Defendant was charged with first-degree premeditated murder, MCL 750.316(1)(a), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, for the shooting death of William Braden Jr. A jury convicted him of the lesser offense of second-degree murder, MCL 750.317, and felony-firearm. He was sentenced to serve 25 to 50 years' imprisonment on the murder conviction, to be served consecutive to a two-year term of imprisonment for the felony-firearm conviction. Defendant appeals as of right, and we affirm.

Defendant's convictions arise from the August 25, 2014 shooting death of William Braden Jr. The record reflects that Jamie Miller, a good friend of Braden's, had been at his house earlier in the day. Miller then walked back to her house while Braden rode his bicycle there. Outside of Miller's house, the two stopped and engaged in conversation. Gregory Weaver, Miller's boyfriend, arrived on his bicycle and joined their conversation. According to Weaver, he had been in an argument with Miller earlier in the day.[1] Two area residents testified that they heard and saw Miller, Weaver, and Braden arguing just before the shooting. However, Miller testified that they were not arguing during the conversation with Braden, and Weaver testified that although he had bicycled to Miller's to continue the earlier argument, when he arrived he only talked with Braden and Miller.

---

[1] This was corroborated by testimony from one of Miller's friends that she observed Miller and Weaver arguing and saw Weaver throw a soda can at Miller. Miller's friend testified that after the argument, Miller called Braden.

-1-

It is undisputed that, while Miller, Weaver, and Braden were talking or arguing, a green vehicle pulled up. Defendant was a passenger in that vehicle. Defendant testified that he had just happened to be driving by the location and observed Braden, who he did not know, arguing with Weaver, who was a friend of his. Weaver had been over at defendant's house earlier in the day, and had, according to defendant, left after speaking on the phone with a female. Weaver testified that he did not tell defendant about his earlier argument with Miller and that he did not tell defendant that he was going to Miller's house to continue that argument.

Multiple witnesses testified that defendant got out of the vehicle. Miller and Weaver both testified that defendant said something like "what's up" and that Braden responded. Weaver testified that defendant then approached Braden and punched his shoulder blade area. Miller, however, testified that defendant punched Braden's face. Miller testified that after being hit, Braden stumbled back off his bicycle. Both Miller and Weaver testified that Braden, who was larger than defendant, then hit defendant. Weaver testified that he turned away and heard a gunshot; he did not see a gun, see Braden get shot, or see where defendant went after the gun was fired. Miller testified that defendant pulled his gun after being punched and then, without "even looking" he "just shot" Braden from a couple of feet away. She testified that defendant then jumped into the green vehicle he arrived in and that the vehicle quickly drove away.

Defendant gave a different account of the incident. He testified that when he exited the vehicle, he asked what was happening. He said Braden responded by asking who he was. Then, Weaver handed defendant a gun and indicated that he was going to "beat" Braden. Defendant testified that he hesitated and then took the gun and stuck it in his waistband. He explained that almost immediately after handing him the gun, Weaver took a swing at Braden but missed. Braden then hit Weaver in the face, so defendant stepped between them to stop Weaver from making a move toward Braden. Defendant testified that although he was only acting as a peacemaker, Braden punched him in the right side of his face.[2] He said that as a result, he "blacked out" and stumbled back in a daze. He testified that he then just "pulled the gun and I just shot him." Defendant testified that he did not mean to do it, but he was scared of Braden because Braden could have knocked him unconscious with another hit. He testified that he just closed his eyes and fired on impulse.[3]

---

[2] Defendant denied punching Braden at any time during the incident.

[3] Other witnesses testified to what they saw during the incident. Holly Ford testified that she saw defendant knock Braden off of his bicycle while screaming vulgarities at him. She said that Braden then punched defendant, Braden said "he's got a gun," and that she saw defendant draw a gun from his waistband and shoot it. Ford's daughter testified that when defendant exited the green vehicle, he threw his hands up as if he wanted to fight. She testified that he then punched Braden, that Braden appeared to punch him back, that Braden yelled "gun," and that defendant then stepped back and fired a gun. Nichole Wynn testified that Weaver swung at Braden, but missed. She said that defendant then punched Braden in the face, and that Braden then punched defendant in the face. She testified that defendant then removed a firearm from his waistband. She said it happened too fast for her to see if defendant aimed the gun. Wynn's husband, who

Defendant first argues that the trial court erred in not instructing the jury on self-defense and related instructions, not instructing the jury fully on the defense of accident, and not defining relevant legal terms.[4] We address each argument in turn.

The trial court denied defendant's request to instruct the jury on self-defense. A trial court is not required to instruct the jury on a theory or defense that is not supported by the evidence. *People v Mills*, 450 Mich 61, 81; 537 NW2d 909 (1995), mod in part on other grounds 450 Mich 1212 (1995). Thus, the defendant has "the initial burden of producing some evidence from which the jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist[.]" *People v Dupree,* 486 Mich 693, 709-710; 788 NW2d 399 (2010).

As we explained in *People v Guajardo,* 300 Mich App 26, 35; 832 NW2d 409 (2013):

Under the common law, the affirmative defense of self-defense justified the killing of another person if the defendant " 'honestly and reasonably believes his life is in imminent danger or that there is a threat of serious bodily harm and that it is necessary to exercise deadly force to prevent such harm to himself.' " *Dupree,* 486 Mich at 707, quoting *People v Riddle,* 467 Mich 116, 127; 649 NW2d 30 (2002). In general, a defendant does not act in justifiable self-defense when he or she uses excessive force or when the defendant is the initial aggressor. *Id*.

"The necessity element of self-defense normally requires that the actor try to avoid the use of deadly force if he can safely and reasonably do so, for example by applying nondeadly force or by utilizing an obvious and safe avenue of retreat." *Riddle,* 467 Mich at 119. However, "where it is uncontested that the defendant was the victim of a sudden and violent attack, the Court should not instruct the jury to consider whether retreat was safe, reasonable, or even possible[.]" *Id*. at 119-120. Further, there is no duty to retreat if a person believes that an attacker is about to use a deadly weapon. *Id*. at 119.

In this case, defendant did not claim that he shot the gun in self-defense. He explained to the jury that after Braden hit him, he "blacked out," stumbled back, and was dazed. He stated that, on impulse and without thought, he drew the gun from his waistband and fired with his eyes closed. Although he testified that he was scared after Braden hit him and was concerned that he might be knocked unconscious if he was hit again, he did not testify that he drew his gun and shot Braden in order to defend himself from Braden. In fact, defendant actually testified that

testified for the defense, stated that before defendant arrived, Weaver pulled up his shirt and displayed a gun before taking a swing at Braden. He said that Weaver missed and Braden then struck Weaver. A few minutes later, defendant arrived in a green vehicle. He testified that defendant threw a punch at Braden, who then struck him. He testified that defendant then pulled a gun from his waistband and shot Braden.

[4] We review the trial court's decision regarding whether a jury instruction is applicable to the facts of the case for an abuse of discretion, but review any questions of law de novo. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006).

when he left the scene, he did not even know that Braden had been shot. Based on this record, the trial court did not abuse its discretion when it declined to instruct the jury on self-defense.[5]

Defendant next acknowledges that the trial court instructed the jury on accident consistent with M Crim JI 7.2. However, he argues that the trial court erred in failing to also instruct the jury on the defense of accident consistent with M Crim JI 7.1.[6]

M Crim JI 7.1 (involuntary act), the instruction not given, provides:

(1) The defendant says that [he / she] is not guilty of _____ because _____'s death was accidental. That is, the defendant says that _____ died because [*describe outside force; e.g., "the gun went off as it hit the wall"*].

(2) If the defendant did not mean to [pull the trigger / *(state other action)*] then [he / she] is not guilty of murder. The prosecutor must prove beyond a reasonable doubt that the defendant meant to _____.

This instruction applies when the death was caused by an involuntary act, such as throwing a gun at a wall and having it go off. Here, defendant did not testify to any involuntary acts that made the gun go off. Instead, he testified that he drew and fired on impulse, that he was "blacked out" and dazed, and that he was not thinking. His testimony was in line with the accident instruction given by the trial court. M Crim JI 7.2 (not knowing consequences of act), the instruction given, provides:

(1) The defendant says that [he / she] is not guilty of _____ because _____'s death was accidental. By this defendant means that [he / she] did not mean to kill or did not realize that what [he / she] did would probably cause a death or cause great bodily harm.

(2) If the defendant did not mean to kill, or did not realize that what [he / she] did would probably cause a death or cause great bodily harm, then [he / she] is not guilty of murder.

---

[5] Defendant also argues that the trial court erred when it failed to instruct the jury in accordance with M Crim JI 7.18 (clarifying that an initial aggressor may assert self-defense only if he withdraws from the encounter, communicates his intent to withdraw to the other person, and the other person then continues the fight) and M Crim JI 7.16 (explaining the duty to retreat to avoid using deadly force). However, given that both of these instructions depend on the applicability of self-defense, which did not apply, we conclude that the court did not err in failing to so instruct the jury.

[6] Because defendant did not request an instruction based on M Crim JI 7.1, we review this claim for plain error affecting defendant's substantial rights. *People v Gonzalez*, 256 Mich App 212, 225; 663 NW2d 499 (2003). "We will not reverse a conviction if the instructions fairly presented the issues to be tried and sufficiently protected the defendant's rights." *Id*.

This squarely matches with defendant's testimony that he did not mean to kill Braden, that he drew and fired on impulse after being struck by Braden, and that he did not even know that he had actually shot Braden until after the accident. This instruction allowed the jury to find that defendant was not guilty of murder if it believed his testimony that he blacked out and the gun was discharged by impulse without any thought or intent to shoot anyone. Accordingly, there was no plain error affecting defendant's substantial rights. See *People v Gonzalez*, 256 Mich App 212, 225; 663 NW2d 499 (2003).

Defendant next argues that the trial court erred by failing to define certain terms such as negligence, gross negligence, careless, and reckless, which were parts of the trial court's instructions on the lesser offenses of involuntary manslaughter and careless, reckless, or negligent use of a firearm. A trial court is not required to specifically define terms that are "generally familiar to lay persons and [] susceptible of ordinary comprehension." *People v Martin*, 271 Mich App 280, 352; 721 NW2d 815 (2006). In this case, it was not improper for the trial court to leave it to the jury to rely on the common meanings of the challenged terms, especially where, in the court's experience, providing definitions of those terms would likely have caused confusion for the jury.

Nevertheless, even if the court erred in failing to define the challenged terms, the error was harmless.[7] During deliberations, the jury asked for a definition of "great bodily harm," and the trial court defined that term for the jury. The jury, however, never expressed any need for further instruction on the meaning of other terms used in the court's instructions. Further, the jury found beyond a reasonable doubt that defendant was guilty of second-degree murder. In convicting defendant of second-degree murder, the jury not only rejected the lesser offenses of involuntary manslaughter and careless, reckless, or negligent discharge of a firearm, but also the lesser offense of voluntary manslaughter. If the jury has a choice to convict on another intermediate charge and yet convicted on the greater offense, an error with a lesser offense instruction can be harmless. *People v Wilson*, 265 Mich App 386, 396; 695 NW2d 351 (2005). Given that the jury found that defendant committed a more serious offense and did not express a problem understanding the court's instructions related to involuntary manslaughter and careless, reckless, or negligent discharge of a firearm, and that the jury also rejected the lesser offense option of voluntary manslaughter, any error in failing to define certain terms in the involuntary manslaughter and careless, reckless, or negligent discharge of a firearm instructions was harmless.

Next, in a pro se supplemental brief filed pursuant to Supreme Court Administrative Order 2004-6, Standard 4, defendant argues that the trial court erred in denying his motion to

---

[7] A preserved instructional error is not grounds for reversal unless it is more probable than not that the error was outcome determinative. *People v Cornell*, 466 Mich 335, 363-364, 367; 646 NW2d 127 (2002).

quash the information because there was insufficient evidence of premeditation and deliberation to support his bindover to circuit court on the first-degree premeditated murder charge.[8]

But even assuming the district court's bindover decision was in error, reversal is not required. An error during the preliminary examination stage "does not require automatic reversal of the subsequent conviction absent a showing that defendant was prejudiced at trial." *People v Hall*, 435 Mich 599, 602-603; 460 NW2d 520 (1990). Defendant was not convicted of first-degree murder at trial. He was instead convicted of the lesser offense of second-degree murder and does not challenge the sufficiency of that conviction. Nor has he directed us to any evidence in the record indicating that the jury's verdict was based on compromise. Further, after the submission of proofs at trial, defendant was free to argue, and did in fact argue, that the prosecution had failed to present sufficient evidence to support submitting the charge of first-degree murder to the jury. Thus, it does not appear that defendant was prejudiced at trial based on the trial court's failure to quash the information.

Defendant also argues that the trial court erred in denying his motion for directed verdict on the first-degree premeditated murder charge.[9] But because we conclude that any error in submitting the first-degree murder charge to the jury was harmless, we do not reach the question of whether the evidence at trial was sufficient to support a charge of first-degree murder.

In *People v Graves*, 458 Mich 476, 486–487; 581 NW2d 229 (1998), our Supreme Court held that "a defendant has no room to complain when he is acquitted of a charge that is improperly submitted to a jury, as long as the defendant is actually convicted of a charge that was properly submitted to the jury." Nevertheless, upon a showing that a charge was erroneously submitted to the jury, a court may reverse a defendant's conviction of a lesser charge if there are "sufficiently persuasive indicia of jury compromise." *Id*. at 487–488. The *Graves* Court held that there may be sufficiently persuasive indicia of compromise when: "1) logically irreconcilable verdicts are returned, or 2) there is clear record evidence of unresolved jury confusion, or 3) . . . where a defendant is convicted of the next-lesser offense after the improperly submitted greater offense." *Id*. at 488.

Defendant was convicted of second-degree murder and felony-firearm. These verdicts are not logically irreconcilable. Further, there is no evidence of unresolved jury confusion.

---

[8] "A circuit court's decision to grant or deny a motion to quash charges is reviewed de novo to determine if the district court abused its discretion in binding over a defendant for trial." *People v Bennett*, 290 Mich App 465, 479; 802 NW2d 627 (2010) (quotation omitted). "An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes." *People v Seewald*, ___ Mich ___; ___ NW2d ___ (2016), slip op at 4-5 (quotation omitted).

[9] "In reviewing the denial of a motion for a directed verdict of acquittal, this Court reviews the evidence in a light most favorable to the prosecution in order to determine whether a rational trier of fact could have found that the essential elements of the charged crime were proved beyond a reasonable doubt." *Gillis*, 474 Mich at 113 (quotation and internal quotation marks omitted).

Thus, the first two situations identified in *Graves* are not present here. However, the jury convicted defendant of second-degree murder, which *is* the next-lesser offense after the improperly submitted greater offense of first-degree murder. As such, we must determine whether the conviction of the next-lesser offense after the improperly submitted charge is a sufficiently persuasive indicator of jury compromise in this case.

The jury was instructed that their verdict must be unanimous and that any verdict must represent their individual considered judgment. The court further instructed:

> It is your duty as jurors to talk to each other and to make every reasonable effort to reach agreement. Express your opinions and the reasons for them, but keep an open mind as you listen to your fellow jurors. Rethink your opinions and don't hesitate to change your mind if you decide you were wrong. Try your best to work out your differences.

> However, although you should try to reach agreement, none of you should give up your honest opinion about the case just because the other jurors disagree with you or just for the sake of reaching a verdict. Because in the end, your vote must be your own, and you must vote honestly and in good conscience.

Jurors are presumed to follow their instructions. *Graves*, 458 Mich at 486. Additionally, the record reflects that on the second day of deliberations, the jury asked for a definition of the phrase "great bodily harm," which pertained to the charge of second-degree murder, not to the charge of first-degree murder. This strongly indicates that at the time the jury asked the question, it had already rejected the charge of first-degree murder and had moved on to the next possible verdict. After being instructed on the definition of great bodily harm, the jury returned a verdict convicting defendant of second-degree murder. The jury was then polled and each juror affirmed that the verdict was in fact his or her verdict. Thus, even if the charge of first-degree murder was improperly submitted to the jury, the charge of second-degree murder was properly submitted to the jury and defendant has not challenged the sufficiency of that conviction. Accordingly, any error in submitting the first-degree murder charge to the jury was harmless given the record in this case.

Affirmed.

/s/ Patrick M. Meter
/s/ Douglas B. Shapiro
/s/ Colleen A. O'Brien