**Lansing, Michigan**

# Opinion

Chief Justice:          Justices:

Robert P. Young, Jr.    Michael F. Cavanagh
                        Marilyn Kelly
                        Stephen J. Markman
                        Diane M. Hathaway
                        Mary Beth Kelly
                        Brian K. Zahra

FILED JULY 26, 2011

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v                                 No. 141312

CECIL D. HUSTON,

      Defendant-Appellee.

BEFORE THE ENTIRE BENCH

MARKMAN, J.

At issue in this case is whether the trial court properly assessed 15 points for offense variable (OV) 10. OV 10 should have 15 points assessed when the defendant has engaged in "predatory conduct" to "exploit[] . . . a vulnerable victim." MCL 777.40(1)(a). Contrary to the Court of Appeals' holding, in order to assess 15 points for OV 10, the defendant's preoffense conduct only has to be directed at "a victim," not any specific victim, and the victim does not have to be inherently vulnerable. Instead, a defendant's "predatory conduct," by that conduct alone (*eo ipso*), can create or enhance a victim's "vulnerability." In this case, defendant engaged in "predatory conduct" to

"exploit[] . . . a vulnerable victim" because, before defendant and his cohort robbed the victim, they were lying in wait, armed with two BB guns and a knife, and hidden from the victim, who was by herself at night in an otherwise empty parking lot. Because the trial court properly assessed 15 points for OV 10, we reverse the judgment of the Court of Appeals and reinstate the trial court's judgment of sentence.

## I. HISTORY

This case arises from events that occurred in February 2005 in the Orchards Mall parking lot in Benton Harbor. The victim, Jackie Flanagan, drove to the mall and parked her vehicle in front of the Sears store where she intended to shop. The victim chose a well-lit parking spot because it was dark outside. When she got out of her vehicle, she was approached by defendant and his cohort, who were 15 and 16 years old respectively. One of the boys pointed a BB gun at the victim's face and demanded her purse, wallet, and car keys, while the other boy put a BB gun to the back of the victim's head. The victim gave the boys her cell phone and car keys but had trouble getting her purse off her shoulder. Defendant's cohort pushed the victim to the ground and cut the purse from her shoulder with a utility knife. Both boys then fled the scene in the victim's vehicle. The next day, police recovered the victim's vehicle and found two BB guns inside it. Further investigation led police to defendant and his cohort.

Defendant was charged with armed robbery and carjacking. He entered a plea of guilty of armed robbery, MCL 750.529, pursuant to a plea bargain offered by the prosecutor.[1] At sentencing, defendant challenged the scoring of OV 10, arguing that it

---

[1] Defendant's cohort also entered a guilty plea to armed robbery.

2

was incorrectly scored at 15 points. OV 10 addresses "exploitation of a vulnerable victim" and requires "predatory conduct" for the assessment of 15 points. MCL 777.40(1)(a). Defendant argued that there was nothing "predatory" about this robbery because it was a "random" act. The trial court rejected defendant's argument and concluded that predatory conduct was established for purposes of scoring OV 10 at 15 points because defendant was lying in wait in the parking lot where he robbed the victim. Defendant's recommended minimum sentence range under the sentencing guidelines was calculated as 126 to 210 months. The trial court sentenced defendant to 180 months to 600 months in prison.

On appeal in the Court of Appeals,[2] defendant argued that the trial court had improperly scored OV 10 and that this error affected his sentencing guidelines range.[3] In a published opinion per curiam, the Court of Appeals reversed defendant's judgment of sentence and remanded for resentencing, concluding that OV 10 should have been scored at zero points, not at 15 points. *People v Huston*, 288 Mich App 387, 397-398; 794 NW2d 350 (2010). The Court of Appeals held that the "vulnerability" of a victim must be determined by characteristics personal to the victim. *Id.* at 395-397. The Court of

---

[2] The Court of Appeals originally denied defendant's application for leave to appeal. However, this Court remanded the case to the Court of Appeals for consideration as on leave granted in light of *People v Cannon*, 481 Mich 152; 749 NW2d 257 (2008). *People v Huston*, 485 Mich 885 (2009).

[3] If OV 10 had been scored at zero points instead of 15 points, defendant's total OV score would have been 51 points, which would decrease his OV level from IV to III. This reduction would have made defendant's minimum sentence range 108 to 180 months, instead of 126 to 210 months. See MCL 777.62.

Appeals acknowledged that at the time of the offense it was dark outside and the victim was alone, which may have made the robbery easier to carry out. *Id.* at 397. Nevertheless, the Court of Appeals reasoned that those facts failed to establish that the victim was personally or inherently vulnerable and, therefore, that the trial court erred by assessing 15 points for OV 10. *Id.*

This Court granted the prosecutor's application for leave to appeal in order to consider whether the "vulnerability" of a victim, for purposes of scoring OV 10, is limited to the victim's personal characteristics. *People v Huston*, 488 Mich 876 (2010).

## II. STANDARD OF REVIEW

The interpretation and application of the legislative sentencing guidelines, MCL 777.1 *et seq*., involve legal questions that this Court reviews de novo. *People v Morson*, 471 Mich 248, 255; 685 NW2d 203 (2004).

## III. ANALYSIS

MCL 777.40 provides:

> (1) Offense variable 10 is *exploitation of a vulnerable victim.* Score offense variable 10 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

> (a) *Predatory conduct* was involved ................................... 15 points

> (b) The offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status .................................................... 10 points

> (c) The offender exploited a victim by his or her difference in size or strength, or both, or exploited a victim who was intoxicated, under the influence of drugs, asleep, or unconscious ....................................... 5 points

> (d) The offender did not exploit a victim's vulnerability ...... 0 points

(2) The mere existence of 1 or more factors described in subsection (1) does not automatically equate with victim vulnerability.

(3) As used in this section:

(a) *"Predatory conduct" means preoffense conduct directed at a victim for the primary purpose of victimization.*

(b) "Exploit" means to manipulate a victim for selfish or unethical purposes.

(c) *"Vulnerability" means the readily apparent susceptibility of a victim to injury, physical restraint*, persuasion, or temptation.

(d) "Abuse of authority status" means a victim was exploited out of fear or deference to an authority figure, including, but not limited to, a parent, physician, or teacher. [Emphasis added.]

## A. "PREDATORY CONDUCT"

Contrary to the Court of Appeals' and the dissents' contentions, MCL 777.40(3)(a) does not define "predatory conduct" to mean preoffense conduct directed at *the* victim; instead, MCL 777.40(3)(a) defines "predatory conduct" to mean "preoffense conduct directed at *a* victim . . . ."[4] (Emphasis added.) As this Court has explained:

"Traditionally in our law, to say nothing of our classrooms, we have recognized the difference between 'the' and 'a.' 'The' is defined as 'definite article. 1. (used, esp. before a noun, with a specifying or particularizing effect, as opposed to the indefinite or generalizing force of the indefinite article a or an) . . . .' *Random House Webster's College*

---

[4] We recognize that in *Cannon*, 481 Mich at 162, this Court indicated that the defendant's preoffense conduct must be directed at "one or more specific victims . . . ." However, this question was not at issue in *Cannon*, there was no analysis concerning this issue in *Cannon*, and it was clearly dictum in *Cannon*. See *Wold Architects & Engineers v Strat*, 474 Mich 223, 232 n 3; 713 NW2d 750 (2006). Contrary to the dissent's contention, it was clearly dictum because it was not "essential to [the] determination of the case in hand," *id*. (quotation marks and citations omitted), whatever *Cannon*'s desire "to provide the correct framework for lower courts to apply when deciding whether to assess points for predatory conduct under OV 10," *post* at 5 n 7.

5

> *Dictionary*, p 1382." [*Robinson v Detroit*, 462 Mich 439, 461; 613 NW2d 307 (2000) (citation omitted).]

Because the Legislature chose to use the words "a victim" in MCL 777.40(3)(a), we must construe MCL 777.40(3)(a) to mean *a* victim, rather than *the* victim. That is, we must take care not to construe MCL 777.40(3)(a) as requiring that the defendant's preoffense predatory conduct have been directed at one particular or specific victim, but instead as requiring only that the defendant's preoffense predatory conduct have been directed at *a* victim.[5]

Furthermore, from a policy perspective, we are unsure why the Legislature would want a defendant who directed his preoffense conduct toward a specific victim, say, for example, at his ex-girlfriend, to be sentenced more severely than the defendant who directed his preoffense conduct at the community-at-large by lying in wait, armed, in a parking lot at night, waiting for the first random person to come along so that he or she could be criminally victimized. Who poses the greater threat to society-- the defendant

---

[5] The dissents conclude that the defendant's preoffense predatory conduct must be directed at one particular or specific victim because "vulnerability" is defined as a "readily apparent susceptibility . . . to injury, physical restraint, persuasion, or temptation," MCL 777.40(3)(c), and "[i]t cannot become 'readily apparent' to an offender that a victim is susceptible *before* the offender identifies the victim." *Post* at 6 (HATHAWAY, J., dissenting in part) (emphasis in the original). We respectfully disagree. If a defendant hides in the bushes of a mall parking lot at night with the intention of waiting there until a woman who is by herself parks nearby so that he can rob her, it is most certainly "readily apparent" to that defendant that the victim is susceptible *before* he even identifies the victim. Indeed, that is the very reason the defendant is hiding in the bushes at night in the first place-- to render the victim more susceptible to robbery. And, contrary to the dissents' contentions, we are not "delet[ing] the phrase 'directed at a victim'" from the statute. *Post* at 6 (CAVANAGH, J., dissenting). Instead, we are simply refusing to rewrite the statute to read "directed at one or more specific victims," as do the dissents. *Post* at 6 (CAVANAGH, J., dissenting).

who seeks revenge on his ex-girlfriend, and thus who directs his preoffense conduct only toward a single person, or the defendant who seeks opportunistically to rob the first vulnerable person within the community-at-large who happens along? Certainly, the latter instills greater fear and apprehension in more people and has a greater impact on society. Indeed, this case illustrates how this fear is diffused throughout the community. The victim here felt vulnerable even *before* the attack and testified that she specifically "circled the parking lot" to "park[] safely under a street lamppost . . . ." Unfortunately, her fears were justified, and defendant's preoffense conduct effectively made a victim not only of *this* victim, but all members of the larger community, each of whom must take precautions against criminal behavior and each of whom may have reasonable apprehensions concerning the threat of criminal conduct being directed toward them.

This also explains why the Legislature chose to assess 15 points for "predatory conduct," the highest number of points that can be assessed under OV 10. The hierarchical range of points that may be assessed under OV 10 extends from zero to 15 points. Zero points are to be assessed when "[t]he offender did not exploit a victim's vulnerability." MCL 777.40(1)(d). Five points are to be assessed when "[t]he offender exploited a victim by his or her difference in size or strength, or both, or exploited a victim who was intoxicated, under the influence of drugs, asleep, or unconscious"-- things that are largely within the victim's own control.[6] MCL 777.40(1)(c). Ten points are to be assessed when "[t]he offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her

_____

[6] We, of course, recognize, as does the dissent, *post* at 3 n 2, that these things are not *always* within the victim's own control.

7

authority status"-- things that are largely outside of the victim's control. MCL 777.40(1)(b). Finally, 15 points are to be assessed when "[p]redatory conduct was involved"-- something that is *always* outside of the victim's control and something that may impact the community as a whole and not only persons with already-existing vulnerabilities. That is, we can only interpret the Legislature's hierarchical approach in OV 10 as indicating its own view that "predatory conduct" deserves to be treated as the *most serious* of all exploitations of vulnerability because that conduct itself created or enhanced the vulnerability in the first place, and it may have done so with regard to the community as a whole, not merely with regard to persons who were *already* vulnerable for one reason or another. By its essential nature, predatory conduct may render *all* persons uniquely susceptible to criminal exploitation and transform all persons into potentially "vulnerable" victims. Only in this way can MCL 777.40(1)(a) be understood as connected with MCL 777.40(1)(b) through (d).

The fact that the Legislature has directed sentencing courts to assess 15 points, the highest number of points that can be scored under OV 10, for "predatory conduct," also strongly suggests that the Legislature did not intend "predatory conduct" to describe *any* manner of "preoffense conduct." Indeed, if that were the case, 15 points could be assessed under OV 10 in almost *all* cases because there will almost always be some manner of preliminary or "preoffense conduct." Few criminal offenses arise utterly spontaneously and without forethought. Most importantly, reading MCL 777.40(1)(a) as requiring 15 points to be assessed for OV 10 in *every* case would essentially render nugatory MCL 777.40(1)(b) through (d), the provisions directing when OV 10 requires a score of 10, 5, and zero points respectively, "and it is well established that '[i]n

8

interpreting a statute, we [must] avoid a construction that would render part of the statute surplusage or nugatory.'" *Robinson v City of Lansing,* 486 Mich 1, 21; 782 NW2d 171 (2010) (citation omitted) (alteration in *Robinson*). To enable MCL 777.40(1)(a) whenever there is *any* "preoffense conduct" would effectively ensure that MCL 777.40(1)(b) through (d) would never be enabled. Thus, to give meaning to the entirety of MCL 777.40(1), and out of recognition that 15 points for "predatory conduct" constitutes the highest number of points available under OV 10 and that "preoffense conduct" is being used to define "predatory conduct," we conclude that the latter term does not encompass *any* "preoffense conduct," but rather only those forms of "preoffense conduct" that are commonly understood as being "predatory" in nature, e.g., lying in wait and stalking, as opposed to purely opportunistic criminal conduct or "preoffense conduct involving nothing more than run-of-the-mill planning to effect a crime or subsequent escape without detection."[7] *People v Cannon,* 481 Mich 152, 162; 749 NW2d 257 (2008). This is the only interpretation that gives meaning to all the paragraphs of MCL 777.40(1), while respecting the obviously hierarchal character of those provisions. In

---

[7] Given that we expressly hold that *only* genuinely predatory conduct, such as lying in wait and stalking, can justify assessing 15 points for OV 10, our construction of MCL 777.40(3)(a), contrary to the partial dissent's contention, does not "lack[] any limitation on the circumstances in which a court may assess the highest number of points possible under OV 10." *Post* at 8. And given that we specifically hold that "preoffense conduct involving nothing more than run-of-the-mill planning to effect a crime or subsequent escape without detection" is not "predatory conduct," the partial dissent is simply wrong to assert that "under the majority's standard today, such 'run-of-the-mill planning' could be used to assess 15 points for OV 10." *Post* at 11 n 26; see also *post* at 8 n 19 ("[I]t is unclear . . . whether the mere planning of a crime would suffice.").

9

short, "preoffense conduct" must be read in context. *Robinson*, 486 Mich at 15 (statutory language "cannot be read in isolation, but must be read in context").

In the instant case, although defendant may not have been lying in wait for a *specific* victim, he was unquestionably lying in wait for *a* victim. Therefore, his preoffense conduct was directed at "a victim." MCL 777.40(3)(a). In this regard, it is helpful to consider why defendant was lying in wait, armed and hidden from view. And the answer to this question is quite obvious-- he was doing this in order to place himself in a better position to be able to successfully rob someone in the parking lot. That is, defendant's preoffense conduct of predatorily lying in wait, armed, and hidden from view was directed at "a victim." Although defendant may not have known whom his victim was going to be when he first undertook these actions, that does not undermine the fact that he was lying in wait for "a victim," and thus that his preoffense conduct was directed toward such "a victim."

In addition, defendant's preoffense conduct was "for the primary purpose of victimization." MCL 777.40(3)(a). As *Cannon*, 481 Mich at 161, explained, "'[v]ictimize' is defined as 'to make a victim of.'" (Citation omitted.) And "victim" is defined as "'a person who suffers from a destructive or injurious action . . . .'" *Id.* (citation omitted). Therefore, "predatory conduct" under the statute is behavior that is predatory in nature, "precedes the offense, [and is] directed at a person for the primary purpose of causing that person to suffer from an injurious action . . . ." *Id.* In this case, before the robbery, defendant laid in wait while armed and hidden from view for the primary purpose of eventually causing a person to suffer from an injurious action, i.e., an armed robbery. In light of these facts, defendant's preoffense conduct constituted

10

"predatory conduct" both under the statutory definition of this phrase and according to common understanding under which lying in wait constitutes quintessential "predatory conduct."

## B. "VULNERABILITY"

The Court of Appeals concluded and the dissent agrees that the victim was not "vulnerable" because there was nothing in the record to indicate that she suffered from an *inherent* or *personal* vulnerability. *Huston*, 288 Mich App at 395-396. We disagree. The Court of Appeals' and the dissent's analyses limit "vulnerability" of a victim to inherent or personal characteristics of the victim, and such a limitation is contrary to the express language of MCL 777.40. We read the statute as contemplating vulnerabilities that may arise not only out of a victim's characteristics, but also out of a victim's relationships or circumstances.

MCL 777.40(1)(b) and (c) explicitly define characteristics, relationships, and circumstances that may make a victim susceptible to injury, physical restraint, persuasion, or temptation.[8] The specified factors listed in subdivisions (b) and (c) relate to the inherent characteristics of the victim, as well as the victim's relationships and circumstances.

---

[8] Subdivision (b) directs the assessment of 10 points in the expressly limited instances of when the offender exploited "a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or [when] the offender abused his or her authority status[.]" Subdivision (c) directs the assessment of 5 points in the expressly limited instances of when the offender exploited "a victim by his or her difference in size or strength, or both, or [when the offender] exploited a victim who was intoxicated, under the influence of drugs, asleep, or unconscious[.]"

Using the statutory language as guidance, *Cannon* listed factors to be considered by a sentencing court when determining whether a victim was vulnerable. *Cannon*, 481 Mich at 158-159. Those factors include the expressly listed characteristics, relationships, and circumstances identified in subdivisions (b) and (c), which are:

> (1) the victim's physical disability, (2) the victim's mental disability, (3) the victim's youth or agedness, (4) the existence of a domestic relationship, (5) whether the offender abused his or her authority status, (6) whether the offender exploited a victim by his or her difference in size or strength or both, (7) whether the victim was intoxicated or under the influence of drugs, or (8) whether the victim was asleep or unconscious. [*Id.*][9]

Both *Cannon* and the express language of MCL 777.40(2) instruct that the mere existence of one of the listed factors does not automatically render the victim "vulnerable" for purposes of scoring OV 10. *Id.* at 159.

In contrast to subdivisions (b) and (c), subdivision (a) does not list any specific characteristics, relationships, or circumstances of the victim. Rather, that subdivision merely requires that "[p]redatory conduct was involved" in order to assess 15 points for OV 10. MCL 777.40(1)(a). Recognizing this notable distinction, *Cannon* explained that the factors it enumerated were *not* meant as an exhaustive list for purposes of finding "vulnerability." *Cannon*, 481 Mich at 158 n 11. Instead, *Cannon* clarified that

---

[9] We disagree with the dissent that all of these factors are "independent of the victim's external physical environment." *Post* at 3. The existence of a domestic relationship, whether the offender abused his or her authority status, and whether the offender exploited a victim by his or her difference in size or strength or both are clearly not. Rather, they are at least in part dependent on the *offender's* relationship to the victim, the *offender's* authority status over the victim coupled with the *offender's* decision to abuse this status, and the *offender's* size or strength.

12

> [t]he absence of one of these factors does not preclude a finding of victim vulnerability when determining whether it is appropriate to assess 15 points for predatory conduct. Rather, the evidence must show merely that it was readily apparent that the victim was susceptible to injury, physical restraint, persuasion, or temptation. [*Id.*]

Accordingly, to assess 15 points for OV 10, a court must find that an offender engaged in predatory conduct and exploited a vulnerable victim, using only the statutory definition of "vulnerability." Again, MCL 777.40(3)(c) defines "vulnerability" as the "readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation," and such vulnerability may or may not arise from the explicitly listed characteristics, relationships, and circumstances set forth in subdivisions (b) and (c). The statute does not mandate that this "susceptibility" be *inherent* in the victim. Rather, the statutory language allows for susceptibility arising from external circumstances as well.

In the instant case, the victim was alone in the dark, and defendant and his cohort outnumbered her. Moreover, a key fact that greatly increased the "vulnerability" of the victim in these specific circumstances was that defendant and his cohort were lying in wait for her, armed and hidden from her view. By lying in wait for a victim in the manner that defendant did here, he made the victim more "susceptib[le] . . . to injury [or] physical restraint," i.e., more "vulnerable." MCL 777.40(3)(c).[10] That is, just as the

---

[10] Although the partial dissent is "unclear . . . whether the mere planning of a crime would suffice" to establish "genuinely" predatory conduct, *post* at 8 n 19, it is worth emphasizing that lying in wait is not the equivalent of the "mere planning of a crime." See, e.g., *Webster v Woodford*, 369 F3d 1062, 1073 (CA 9, 2004) ("[L]ying in wait requires three elements: concealment, watching, and waiting."). Each of these elements, when joined together, has the potential to render any member of the public vulnerable to criminal activity, as the perpetrator by such conduct both strengthens his own hand and weakens that of the public, until the former believes that his opportunity to victimize the latter has been optimized. Lying in wait describes the kind of conduct that in the context

defendant in *People v Apgar*, 264 Mich App 321; 690 NW2d 312 (2004), enhanced the victim's "vulnerability" by forcing her to smoke marijuana before he sexually assaulted her; and the defendant in *People v Kimble*, 252 Mich App 269; 651 NW2d 798 (2002), enhanced the victim's "vulnerability" by following her and waiting until she pulled into her driveway before striking; and the defendant in *People v Mahon*, 485 Mich 971; 774 NW2d 691 (2009) (CORRIGAN, J., concurring), enhanced the victim's "vulnerability" by waiting for the bar to close and the victim to exit the bar before he assaulted her, the defendant in the instant case enhanced the victim's "vulnerability" by lying in wait while armed and hidden from view before he robbed her.

We conclude that a person walking alone at night in a parking lot while two armed people hidden from that person's view lie in wait to rob that person is a "vulnerable" victim because he or she would have a "readily apparent susceptibility . . . to injury [or] physical restraint . . . ." MCL 777.40(3)(c). This conclusion avoids the problem that the dissent is concerned about of characterizing all victims of crimes as "vulnerable" victims, while at the same time it recognizes that a defendant's "predatory conduct" can establish or enhance the "vulnerability" of a victim.[11] Finally, defendant unquestionably

---

of a homicide would be sufficient to satisfy the elements of first-degree murder. See MCL 750.316(1)(a) ("Murder perpetrated by . . . lying in wait" is "first degree murder.").

[11] The dissent is concerned that under our approach "all victims [are] vulnerable." *Post* at 4. However, what the dissent does not seem to appreciate is that we *only* find the victim here to be "vulnerable" because defendant and his cohort engaged in "predatory conduct" that transformed an "ordinary" victim into a "vulnerable" victim. Obviously, not all, or even most, defendants engage in "predatory conduct," and, thus, not "all victims [are] vulnerable."

14

"exploit[ed]" the "vulnerable victim" in this case because he "manipulate[d] [her] for selfish or unethical purposes" by lying in wait for her and then robbing her of her purse and car.[12]  MCL 777.40(3)(b).  As this Court explained in *Cannon*, 481 Mich at 159, "predatory conduct" "inherently involves some level of exploitation," and thus "points may be assessed under OV 10 for exploitation of a vulnerable victim when the defendant has engaged in conduct that is considered predatory under the statute."

## IV. CONCLUSION

For these reasons, we conclude that defendant engaged in "predatory conduct" to "exploit[] . . . a vulnerable victim," MCL 777.40(1)(a), and thus that the trial court did not err by assessing 15 points for OV 10.  For a trial court to assess 15 points for OV 10, the defendant's preoffense conduct only has to be directed at "a victim," not any specific victim, and the victim does not have to be inherently vulnerable.  Instead, a defendant's "predatory conduct," by that conduct alone (*eo ipso*), can create or enhance a victim's "vulnerability."  Therefore, we reverse the judgment of the Court of Appeals and reinstate the trial court's judgment of sentence.

Stephen J. Markman
Robert P. Young, Jr.
Mary Beth Kelly
Brian K. Zahra

---

[12] Contrary to the partial dissent's contention, *post* at 7 n 18, OV 10 could not be assessed at 15 points under our approach if the defendant engaged in preoffense predatory conduct but was arrested before he could commit the intended offense because OV 10 requires "exploitation of a vulnerable victim."  MCL 777.40(1).

15

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v                                      No. 141312

CECIL D. HUSTON,

      Defendant-Appellee.

_____

HATHAWAY, J. *(concurring in part and dissenting in part).*

I concur with the majority's conclusion that for purposes of scoring offense variable (OV) 10, the "vulnerability" of a victim is not limited to inherent or personal characteristics of the victim. I agree with this conclusion because MCL 777.40 expressly contemplates vulnerabilities that may arise out of a victim's characteristics, as well as a victim's relationships or circumstances. However, I dissent from the majority's conclusion that a defendant's preoffense conduct need not be directed at a specific victim in order to constitute "predatory conduct." Instead, I believe that this Court correctly interpreted MCL 777.40(1)(a) in *People v Cannon*, 481 Mich 152; 749 NW2d 257 (2008), to require that a defendant's preoffense conduct must have been directed at one or more specific victims for 15 points to be assessed under OV 10.

Accordingly, I would vacate the Court of Appeals' holdings that a victim's vulnerability is limited to personal or inherent characteristics of the victim and that defendant's preoffense conduct was targeted at this victim. I would affirm the judgment

of the Court of Appeals reversing defendant's sentence and remanding this matter to the trial court for resentencing and instruct the trial court assess zero points for OV 10.

## I. ANALYSIS

### A. OFFENSE VARIABLE 10—EXPLOITATION OF A VULNERABLE VICTIM

At issue in this case is whether defendant exploited a vulnerable victim by engaging in predatory conduct for purposes of assessing 15 points for OV 10. In deciding this matter, we must interpret the statute governing OV 10, MCL 777.40. When interpreting statutes, this Court must determine and give effect to the Legislature's intent.[1] The words used in the statute are the most reliable indicator of the Legislature's intent and should be interpreted in light of their ordinary meaning and the context within which they are used in the statute.[2] When interpreting a statute, this Court avoids a construction that would render any part of the statute surplusage or nugatory.[3] Similarly, when determining how offense variables should be scored, this Court reads the sentencing guidelines statutes as a whole.[4]

MCL 777.40 governs OV 10 and provides:

> (1) Offense variable 10 is exploitation of a vulnerable victim. Score offense variable 10 by determining which of the following apply and by

---

[1] *People v Lowe*, 484 Mich 718, 721; 733 NW2d 1 (2009), citing *People v Koonce*, 466 Mich 515, 518; 648 NW2d 153 (2002).

[2] *People v Morey*, 461 Mich 325, 330; 603 NW2d 250 (1999).

[3] *People v McGraw*, 484 Mich 120, 126; 771 NW2d 655 (2009).

[4] *Id*. at 124-125.

2

assigning the number of points attributable to the one that has the highest number of points:

(a) Predatory conduct was involved . . . . . . . . . . . . . . . . . . . 15 points

(b) The offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status . . . . . . . . . . . . . . . . . . . . . . . . . 10 points

(c) The offender exploited a victim by his or her difference in size or strength, or both, or exploited a victim who was intoxicated, under the influence of drugs, asleep, or unconscious . . . . . . . . . . . . . . . . . . . . 5 points

(d) The offender did not exploit a victim's vulnerability. . . . 0 points

(2) The mere existence of 1 or more factors described in subsection (1) does not automatically equate with victim vulnerability.

(3) As used in this section:

(a) "Predatory conduct" means preoffense conduct directed at a victim for the primary purpose of victimization.

(b) "Exploit" means to manipulate a victim for selfish or unethical purposes.

(c) "Vulnerability" means the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation.

(d) "Abuse of authority status" means a victim was exploited out of fear or deference to an authority figure, including, but not limited to, a parent, physician, or teacher.

In *Cannon*, this Court considered MCL 777.40 in its entirety and specifically addressed the issue of when 15 points are properly assessed under OV 10.[5] *Cannon*

---

[5] *Cannon*, 481 Mich at 156-162. In *Cannon*, the defendant and his two cohorts waited outside a Burger King until no customers were inside. They then entered the Burger King, where four employees were on duty, and committed a robbery. The trial court assessed 15 points for OV 10, following the prosecutor's argument that defendant and his cohorts targeted the restaurant and planned their actions to victimize the employees. *Id.* at 154-155.

3

clarified that "the Legislature did not intend that 15 points be assessed for preoffense conduct involving nothing more than run-of-the-mill planning to effect a crime or subsequent escape without detection."[6] Instead, the focus of MCL 777.40(1)(a) is on the exploitation of vulnerable victims involving predatory conduct.[7]

Pursuant to *Cannon*, 5 to 15 points should be assessed under OV 10 only when it is "readily apparent that a victim was 'vulnerable,' i.e., was susceptible to injury, physical restraint, persuasion, or temptation."[8] In addition, MCL 777.40 requires that 5 to 15 points be assessed when the offender exploited a vulnerable victim. The statute defines "exploit" as "to manipulate a victim for selfish or unethical purposes."[9] If a "vulnerable victim" has not been "exploited," MCL 777.40(1)(d) expressly mandates that OV 10 must be scored at zero points.

For a score of 15 points under OV 10, the offender who exploited the vulnerable victim must have also engaged in "predatory conduct."[10] MCL 777.40(3)(a) defines "predatory conduct" as "preoffense conduct directed at a victim for the primary purpose of victimization." *Cannon* clarified when 15 points should be assessed for predatory conduct by setting forth three analytical questions to aid lower courts:

---

[6] *Id.* at 162.

[7] *Id.*

[8] *Id.* at 158.

[9] MCL 777.40(3)(b).

[10] MCL 777.40(1)(a).

4

(1) Did the offender engage in conduct before the commission of the offense?

(2) Was this conduct directed at one or more specific victims who suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation?

(3) Was victimization the offender's primary purpose for engaging in the preoffense conduct?[11]

The three-pronged *Cannon* test for predatory conduct incorporates the statutory requirements of predatory conduct, exploitation, and vulnerability. Thus, all three prongs of the test must be met in order to assess 15 points for OV 10.[12]

## B. PREDATORY CONDUCT

In this case, defendant did not engage in predatory conduct because his preoffense conduct was not directed at this victim, as this Court has concluded is required by MCL 777.40(1)(a). According to *Cannon*, the preoffense conduct "must have been 'directed at a victim' before the offense was committed."[13] *Cannon* provided the following guidance regarding this part of the test:

A lion that waits near a watering hole hoping that a herd of antelope will come to drink is not engaging in conduct directed at a victim. However, a lion that sees antelope, determines which is the weakest, and stalks it until the opportunity arises to attack it engages in conduct directed at a victim. Contrast that with an individual who intends to shoplift and watches and waits for the opportunity to commit the act when no one is looking. The individual has not directed any action at a victim.[14]

---

[11] *Cannon*, 481 Mich at 162.

[12] *Id*.

[13] *Id*. at 160.

[14] *Id*.

5

The majority focuses on the use of the phrase "a victim" rather than "the victim" in the definition of "predatory conduct" in MCL 777.40(3)(a) to conclude that the offender's conduct need not be directed at a specific victim. But the definition of "vulnerability" in MCL 777.40(3)(c) requires that a victim have a "readily apparent susceptibility . . . to injury, physical restraint, persuasion, or temptation." This language suggests that, before points can be assessed for preoffense conduct, it must be clear that the victim was ascertainable *before* the offense took place. It cannot become "readily apparent" to an offender that a victim is susceptible *before* the offender identifies the victim.[15]

However, it is more reasonable to conclude that the Legislature selected the term "a victim" rather than "the victim" simply because it contemplated that a defendant might victimize more than one victim. In the case of more than one victim, the Legislature intended 15 points to be assessed for OV 10 when the defendant directed predatory conduct at "a" preselected victim, but ultimately victimized multiple victims.[16]

---

[15] For example, in this case, when defendant decided to lie in wait in the mall parking lot, he did not know the identity of the victim he would eventually rob. The victim whom defendant eventually robbed was allegedly "vulnerable" because she was alone in the dark and outnumbered. However, suppose that defendant had engaged in exactly the same preoffense conduct but eventually robbed a group of three women in broad daylight. Under the majority's analysis, 15 points would still be assessed because simply lying in wait for any victim is sufficient to justify a score of 15 points for OV 10. The majority essentially disregards the statutory requirement that a victim's vulnerability be "readily apparent."

[16] For example, consider a situation in which a defendant selects a robbery target (Victim A) and stalks him, waiting for an opportunity to strike. When the best opportunity presents itself, however, Victim A has been joined by Victim B. The

6

In any situation in which a defendant engages in "nothing more than run-of-the-mill planning to effect a crime," the community at large is still a conceivable target because the offender will inevitably carry out the offense against some member of the community.[17] However, that member of the community may only become the offender's target by random chance. If simply targeting the community at large and then carrying out an offense against a random victim who comes along is sufficient to establish predatory conduct, then nearly any type of preoffense conduct will suffice for assessing 15 points under OV 10.[18] Under the majority's analysis, it is difficult to imagine a situation in which a person intending to carry out a crime would not engage in *some* type

---

defendant seizes the opportunity and robs both Victim A and Victim B. Even though Victim A and Victim B would each be considered "a victim" of the eventual crime, only Victim A was "a victim" who was the target of defendant's predatory conduct.

[17] *Cannon*, 481 Mich at 162.

[18] The majority's analysis reads the requirement that the preoffense conduct be "directed at a victim" out of the statute. See *People v Couzens*, 480 Mich 240, 249; 747 NW2d 849 (2008) ("'Courts must give effect to every word, phrase, and clause in a statute and avoid an interpretation that renders nugatory or surplusage any part of a statute.'") (citation omitted). Preoffense conduct for the primary purpose of victimization is always generally directed at victimizing the community at large. Thus, under the majority's approach, any "preoffense conduct . . . for the primary purpose of victimization" will always be sufficient to assess 15 points for OV 10. MCL 777.40(3)(a).

Consider a defendant who lies in wait in a mall parking lot to rob someone who passes by. Before the defendant selects a victim to rob, the police observe him and attempt to detain him. He puts up a fight and attempts to flee. The officers catch him, and he is convicted of resisting arrest under MCL 750.81d(1). Under the majority's approach, 15 points could be assessed for OV 10 could be scored at 15 points because defendant's conduct was directed at the community at large for the primary purpose of victimization. It does not matter under the majority's test that no victim was actually robbed or that the defendant did not engage in the preoffense conduct to carry out the crime of resisting arrest.

of preoffense conduct for the purpose of victimizing *someone* before actually selecting a victim to carry out the offense against.  The majority's construction of MCL 777.40(3)(a) lacks any limitation on the circumstances in which a court may assess the highest number of points possible under OV 10.[19]

The majority uses hindsight to suggest that defendant's conduct was "directed at a victim" because he lay in wait for "a victim" whom he ultimately robbed.  By taking this approach, the majority essentially rewrites the applicable statute to state that an offender's preoffense conduct must be "directed at a potential victim," even if that victim is not identifiable at the time of the preoffense conduct.[20]  In contrast, *Cannon* correctly concluded that an offender's preoffense conduct must be directed at a specific victim. *Cannon*'s interpretation of MCL 777.40 was not only consistent with the statutory

---

[19] The majority states that its analysis is not without a limiting factor because only "genuinely predatory conduct" can be used to justify a 15-point score for OV 10.  But the guidance the majority offers regarding what constitutes "genuinely predatory conduct" is simply that it includes "e.g., lying in wait and stalking" and does not include "purely opportunistic criminal conduct." Obviously, "purely opportunistic criminal conduct" cannot justify a 15-point score for OV 10 because such conduct is by its nature spontaneous and, therefore, will not be "preoffense" conduct.  Thus, it is unclear what constitutes "genuinely" predatory conduct and whether the mere planning of a crime would suffice.  Certainly, planning a crime involves "preoffense conduct . . . for the primary purpose of victimization" and exploits the community at large.

[20] See, e.g., *Reed v Breton*, 475 Mich 531, 550; 718 NW2d 770 (2006) (KELLY, J., dissenting) ("The interpretation offered by the majority contradicts well-established rules of statutory construction because it adds words to the statute that the Legislature did not put there.").

8

language, but it properly limited the assessment of 15 points to circumstances in which an offender's preoffense conduct involved first selecting a specific victim to target.[21]

In applying the second part of the *Cannon* test for predatory conduct, the Court of Appeals correctly acknowledged that a defendant's conduct must have been directed at a specific victim; however, it then erroneously concluded that this defendant's preoffense conduct was directed at this victim.[22] The Court of Appeals reasoned that even though defendant was initially looking for "any victim," he eventually chose "a lone and isolated victim . . . ."[23] The Court of Appeals concluded that defendant's actions were similar to a

---

[21] In analyzing whether preoffense conduct was sufficiently directed at a victim, *Cannon* cited *People v Kimble*, 252 Mich App 269; 651 NW2d 798 (2002), as instructive. *Cannon*, 481 Mich at 160. In *Kimble*, the defendant drove around for an hour in search of a car he could steal so that he could sell its wheel rims. *Kimble*, 252 Mich App at 274. The defendant spotted the victim driving a car with valuable rims and followed her home. *Id*. at 274-275. After watching the victim pull into her driveway, the defendant shot the victim and stole her car. *Id*. The Court of Appeals reasoned that the preoffense conduct of seeking out a victim and following her home for the specific purpose of committing a crime against her constituted predatory conduct. *Id*. at 275. *Cannon* observed that once the defendant in *Kimble* had targeted the owner of the car with valuable rims, his act of following her and waiting for the opportunity to strike was "conduct directed at a victim." *Cannon*, 481 Mich at 160.

The facts of the instant case are distinguishable from *Kimble*. In *Kimble*, the prosecutor presented evidence that the defendant was specifically looking for a vehicle with expensive rims, searched until he found the victim driving a car with expensive rims, and followed the victim for quite some time before shooting the victim in her driveway and stealing her car. Unlike in the record in *Kimble*, the record in this case does not reflect that the victim was specifically targeted for any reason other than that she happened to arrive in the shopping mall parking lot where defendant was waiting for *someone* to rob. In fact, the prosecutor acknowledged that this victim was probably a "random" target and that she may just have been the first person defendant came across.

[22] *Huston*, 288 Mich App at 394.

[23] *Id*.

9

lion "focusing on the weakest antelope in the herd" because defendant waited for particular circumstances to arise before seizing his opportunity to commit the offense.[24] Accordingly, the Court of Appeals concluded that this was "not a random attack on just anyone in the parking lot but a planned attack on an individual perceived to be weak."[25]

From the record, it is reasonable to conclude that defendant's objective was to rob a shopper in the mall parking lot. To accomplish this offense, defendant waited in the mall parking lot for a shopper to come along. The prosecutor acknowledged that the victim may simply have been the first person who did come along. The apparent reasoning of the prosecutor and the Court of Appeals was that once a random person came along and defendant carried out his intended offense against that random person, defendant's conduct was targeted at a specific victim. I disagree.

If defendant's act of waiting for *someone* to come along and then robbing the unlucky person who happened to arrive in that location constituted preoffense conduct sufficiently directed at a "specific" victim, there would be only rare circumstances in which this part of the *Cannon* test would not be met. It may be true that defendant waited for the right time to approach the victim and commit the offense; however, this same argument can be made about almost every offense involving an attack on an individual.

---

[24] *Id.*

[25] *Id.*

Unless an offense is truly of a random nature, eventually every offender will select a victim or victims against whom to carry out their intended offenses.[26]

As previously noted, using the analogy suggested in *Cannon*, the Court of Appeals concluded that defendant's actions were "akin to focusing on the weakest antelope in the herd."[27] However, defendant's preoffense conduct was much more analogous to a lion simply waiting near a watering hole, hoping that a herd of antelope will come to drink.[28] Defendant wanted to rob someone, presumably to get money and a vehicle. A shopping mall is a location where potential victims with money would almost certainly arrive. Therefore, defendant went to a shopping mall where he waited in the hope of a victim arriving. While it is true that defendant may have narrowed in on this particular victim during the short time between when the victim entered the parking lot and when she got

---

[26] The majority dismisses language from *Cannon*—that a defendant's preoffense conduct must be directed at one or more specific victims—as dictum. However, in *Cannon* we also stated that "the Legislature did not intend that 15 points be assessed for preoffense conduct involving nothing more than run-of-the-mill planning to effect a crime or subsequent escape without detection." *Cannon*, 481 Mich at 162. This statement was not dictum, as it directly involved the issue in *Cannon*. Yet under the majority's standard today, such "run-of-the-mill planning" could be used to assess 15 points for OV 10.

[27] *Huston*, 288 Mich App at 394.

[28] *Cannon* provided a hypothetical example explaining that "[a] lion that waits near a watering hole hoping that a herd of antelope will come to drink is not engaging in conduct directed at a victim." *Cannon*, 481 Mich at 160. But under the majority's analysis, simply "lying in wait" is now sufficient to assess 15 points for OV 10. Thus, the majority's analysis is directly contrary to the hypothetical example in *Cannon* that we crafted specifically to guide lower courts in determining what constitutes "predatory conduct."

out of her vehicle, almost every crime involves the offender's eventually settling on one or more targeted persons and waiting for just the right moment to carry out the offense.

*Cannon* clearly directed that targeting a specific person, following that person, and waiting for the opportunity to commit an offense against that person is preoffense conduct sufficiently directed at a victim.[29] On the record in the instant case, I conclude that defendant's preoffense conduct of waiting in the mall parking lot was not sufficiently directed at *this* victim.

Because a requirement of the *Cannon* test for predatory conduct cannot be met, and *Cannon* directed that all three prongs of the test must be answered affirmatively in order to properly assess 15 points for OV 10, I dissent from the majority's conclusion that defendant is not entitled to resentencing.

## II. CONCLUSION

I concur with the majority's conclusion that, for purposes of scoring OV 10, the "vulnerability" of a victim is not limited to inherent or personal characteristics of the victim. However, I dissent from the majority's conclusion that a defendant's preoffense conduct need not be directed at a specific victim in order to constitute "predatory conduct." I believe that the majority opinion creates an overly broad test for "predatory conduct" and misconstrues the language of MCL 777.40.

Contrary to the majority's analysis, I do not believe that defendant engaged in "predatory conduct." This Court has held that a defendant's preoffense conduct must be

---

[29] *Id.*

12

directed at a specific victim in order to constitute predatory conduct, and the record here does not reflect that defendant's preoffense conduct was directed at *this* victim. Instead, the record only establishes that defendant was in a shopping mall parking lot waiting for someone to rob and that, ultimately, this victim arrived. Defendant's preoffense conduct was simply run-of-the-mill planning to effect a crime, which is not "predatory conduct" for purposes of MCL 777.40(1)(a).

Accordingly, I would vacate the Court of Appeals' holdings that a victim's vulnerability is limited to personal or inherent characteristics of the victim and that defendant's preoffense conduct was targeted at this victim. I would affirm the judgment of the Court of Appeals reversing defendant's sentence and remanding this matter to the trial court for resentencing and instruct the trial court to assess zero points for OV 10.

Diane M. Hathaway
Marilyn Kelly

13

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v                            No. 141312

CECIL D. HUSTON,

      Defendant-Appellee.

_____

CAVANAGH, J. (*dissenting*).

      I respectfully dissent from the majority opinion in this case.

      Today, the majority holds that in order to assess 15 points for predatory conduct under offense variable (OV) 10, MCL 777.40(1)(a), the victim's vulnerability need not arise from the victim's inherent or personal characteristics.   Further, the majority concludes that the victim here qualified as a "vulnerable victim" because she was alone and outnumbered at night while defendant and his cohort hid in the bushes adjacent to the parking lot.   Lastly, the majority holds that a defendant's preoffense conduct need not have been directed at a specific victim, even though MCL 777.40(3)(a) defines "predatory conduct" as "preoffense conduct directed *at a victim* for the primary purpose of victimization."   (Emphasis added.)   I respectfully disagree and would hold that (1) the victim's vulnerability for purposes of scoring OV 10 must be personal or inherent to the victim, (2) the victim in this case was not a "vulnerable victim" within the meaning of MCL 777.40(3)(c), and (3) the preoffense conduct engaged in by an offender for the primary purpose of victimization must be "directed at one or more specific victims . . . ."

*People v Cannon*, 481 Mich 152, 162; 749 NW2d 257 (2008).[1]   Accordingly, I would affirm the Court of Appeals' reversal of defendant's sentence and remand this case to the trial court for resentencing with instructions to assess zero points for OV 10.

## I.  VULNERABILITY

In my view, in order to assess 15 points for predatory conduct under OV 10, the readily apparent vulnerability exploited by the offender must relate to some inherent or personal characteristic of the victim.  As this Court declared in *Cannon*, the exploitation of a vulnerable victim is a prerequisite for the assessment of points under OV 10.  *Id.* at 156.  Relying on the definition of "vulnerability" provided by MCL 777.40(3)(c), we held further that "points should be assessed under OV 10 only when it is readily apparent that a victim was 'vulnerable,' i.e., was susceptible to injury, physical restraint, persuasion, or temptation."  *Id.* at 158.  Therefore, the first step when applying OV 10 is to ask whether the victim was a "vulnerable victim" within the meaning of the statute.  For assessing this threshold determination, *Cannon* provided a nonexhaustive list of considerations based on the statutory language to guide courts in assessing victim vulnerability:

> (1) the victim's physical disability, (2) the victim's mental disability, (3) the victim's youth or agedness, (4) the existence of a domestic relationship, (5) whether the offender abused his or her authority status, (6) whether the offender exploited a victim by his or her difference in size or strength or both, (7) whether the victim was intoxicated or under the influence of drugs, or (8) whether the victim was asleep or unconscious. [*Id.* at 158-159.]

---

[1] While I did not join the *Cannon* majority in full, *Cannon*, 481 Mich at 163 (CAVANAGH, J., concurring in part and dissenting in part), I agree that for purposes of scoring OV 10, the preoffense conduct must have been directed at one or more specific victims.

Notably, all these factors relate to the victim's inherent characteristics or personal situation and are independent of the victim's external physical environment.[2] The majority's conclusion that vulnerability need not be inherent to the victim is misguided because it is inconsistent with *Cannon*'s statutorily based threshold test for vulnerability under OV 10.

Because I believe that the readily apparent vulnerability exploited by the offender must relate to some inherent or personal characteristic of the victim, I believe the Court of Appeals correctly held that the victim in this case was not a vulnerable victim, within the meaning of MCL 777.40(3)(c). Merely being alone and outnumbered in a parking lot at night does not relate to an inherent or personal characteristic, but is instead the product of the victim's external environment.[3] And while hiding in the bushes may have

_____

[2] While certain factors may at first blush seem substantively externalized, closer examination reveals that they too are premised on the victim's inherent state of vulnerability. The existence of a domestic relationship and the offender's abuse of his or her authority status over the victim both consider vulnerabilities that result from a preexisting relationship of trust or authority between the offender and the victim. This relationship renders the victim inherently more susceptible to an offender who chooses to exploit that relationship. Further, when an offender exploits a victim by his or her difference in size or strength, the relevance of this factor is premised on the *victim's* size and strength, both of which are inherent and personal characteristics.

Additionally, I take issue with the majority's declaration that differences in size or strength, or being intoxicated, drugged, asleep, or unconscious are "things that are largely within the victim's own control." *Ante* at 7. Differences in size or strength depend in large part on genetics—inherent characteristics over which the victim has no control. Further, being drugged, intoxicated, or asleep often may be induced by another—such as the use of a so-called date-rape drug. Likewise, being unconscious may be the result of an injury or ongoing medical treatment.

[3] I find it notable that when considering the types of vulnerabilities to include in MCL 777.40, the Legislature did not include one of the most obvious circumstances—being outnumbered—as a listed vulnerability. While certainly not dispositive, this supports my

3

increased defendant's likelihood of success, it did not actively alter the victim's state of inherent susceptibility.[4]

In my view, to hold that OV 10 does not depend on a victim's inherent state of vulnerability will lead to overscoring because, under the common meaning of "vulnerability," all victims were vulnerable. Had they not been, the crime would not have been successful. I can think of no situation in which a crime has been successful that it is not possible to point to specific facts of the offense to support the conclusion that the victim was "vulnerable," as that term is commonly understood. In an effort to narrow such a broad applicability of OV 10, the Legislature chose to limit its application to only situations in which an offender exploited some inherent or personal characteristic of the victim. Accordingly, I believe that this victim was not a vulnerable victim for purposes of scoring OV 10.

## II. PREDATORY CONDUCT[5]

Even if I were to determine that this victim was vulnerable, I believe that nonetheless zero points should have been assessed for OV 10 because the preoffense conduct—hiding in the bushes waiting for a likely victim to happen along—was not

---

conclusion that the vulnerability must be inherent, focused on the victim, and not on independent externalities.

[4] Conversely, when an offender drugs an intended victim, he has *actively* altered the victim's inherent state of susceptibility.

[5] While I agree generally with Justice HATHAWAY'S discussion of predatory conduct in part I(B) of her partial dissent, I write separately to elaborate further on my position.

4

directed at this particular victim.[6] In *Cannon*, a majority of this Court explained that when assessing points for predatory conduct, the preoffense conduct "must have been 'directed at a victim' before the offense was committed." *Cannon*, 481 Mich at 160, quoting MCL 777.40(3)(a). Additionally, the second prong of the *Cannon* test for predatory conduct mandated that the preoffense conduct must have been "directed at one or more specific victims . . . ." *Cannon*, 481 Mich at 162. Today's majority opinion, however, holds that the preoffense conduct need not be directed at a particular victim in order to assess 15 points for predatory conduct.[7]

I disagree with the majority opinion's boundless interpretation of "conduct directed at a victim" in MCL 777.40(3)(a) as meaning conduct directed at the "community-at-large." *Ante* at 6-8. "Whenever possible, every word of a statute should

---

[6] On this point, I think the Court of Appeals clearly erred by holding that defendant's choice of this specific victim to attack sufficed as preoffense conduct directed at the victim. Merely choosing a victim is not conduct directed at a victim.

[7] I think it is questionable for the majority to label as "clearly dictum" the statement in *Cannon* that the preoffense conduct must be directed at one or more specific victims. The whole point of the majority opinion in *Cannon* was to provide the correct framework for lower courts to apply when deciding whether to assess points for predatory conduct under OV 10. *Cannon*, 481 Mich at 154, 161-163. The second prong of the analytical framework *Cannon* provided required that the preoffense conduct be "directed at one or more specific victims . . . ." *Id.* at 162. The majority argues that this portion of *Cannon* was "clearly dictum" because it was "not essential to [the] determination of the case in hand . . . ." *Ante* at 5 n 4 (quotation marks and citations omitted). I would, however, remind the majority that there were four employees in the restaurant robbed by the *Cannon* defendant and his cohorts, and, thus, when the majority in *Cannon* outlined a structural paradigm for the trial court to apply on remand, it was essential that the trial court be clear on how to apply OV 10 to a crime involving multiple victims. I would not be so quick to label as dictum an essential prong of an analytical framework provided by this Court.

be given meaning. And no word should be treated as surplusage or made nugatory." *Cannon*, 481 Mich at 158 (quotation marks and citation omitted). In direct contravention of this accepted principle of statutory construction, however, the majority essentially deletes the phrase "directed at a victim" from the explicit definition of "predatory conduct" found in MCL 777.40(3)(a). Under the majority opinion, preoffense conduct need only have been engaged in for the primary purpose of eventually victimizing someone, but need not be directed at anyone in particular. This interpretation fails to give effect to the statute's plain language.

I think the answer is simple concerning why the preoffense conduct must have been directed at a particular victim or group of victims: one cannot direct conduct at "a victim" without first identifying and selecting a victim. In addition, MCL 777.40(3)(c) defines "vulnerability" as "the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation," and it is not possible to assess the "readily apparent susceptibility" of a victim until that victim is particularly identified. Therefore, I believe that the *Cannon* majority was correct in holding that the preoffense conduct must be "*directed at* one or more *specific* victims . . . ." *Cannon*, 481 Mich at 162 (emphasis added).

The majority's reliance on the differences between the definite and indefinite articles is difficult to understand when the statute so clearly provides that the conduct must be *directed at a victim*. See MCL 777.40(3)(a). The indefinite articles "a" or "an" have little meaning when taken out of context. In the context of MCL 777.40(3)(a), "a victim" means "any one" or "one of many" victims, and that is the only meaning that should be definitively attributed to the Legislature's choice to use the indefinite instead of

6

the definite article. To now hold that "a victim" actually means the "community-at-large" is simply not consistent with the statutory language.

I also disagree with the majority's attempt to mitigate the potential damage caused by its boundless interpretation of "a victim" by declaring that 15 points may be assessed only for preoffense conduct that is "commonly understood as being 'predatory' in nature . . . ." *Ante* at 9. Although it is correct that when a term is not defined by statute, it must be interpreted according to its common meaning, MCL 8.3a; *McCormick v Carrier*, 487 Mich 180, 192; 795 NW2d 517 (2010), such is not the case here. Instead, the Legislature expressly defined "predatory conduct" as "conduct directed at a victim for the primary purpose of victimization." MCL 777.40(3)(a). This statutory definition says nothing about how predatory conduct is commonly understood.

Finally, today's majority decision creates difficulty distinguishing between mere planning and preparation to commit a crime and actual preoffense conduct that supports assessing points under OV 10 for predatory conduct. See *Cannon*, 481 Mich at 162 ("[T]he Legislature did not intend that 15 points be assessed for preoffense conduct involving nothing more than run-of-the-mill planning to effect a crime . . . ."). Before today's decision, courts only needed to consider the preoffense conduct during the limited window of time between the selection of a particular victim and the time the offense conduct began. Because it is no longer necessary under the position of the majority that the conduct be directed at any *specific* victim, but only toward the community at large, courts must now consider all conduct the offender engaged in for the primary purpose of victimizing some eventual victim. In my view, rather than clarifying our OV 10 jurisprudence, today's decision merely muddies the waters more.

7

I therefore respectfully dissent.

Michael F. Cavanagh